# COMPTROLLER OF THE TREASURY, INCOME TAX DIVISION *v.* DIEBOLD, INCORPORATED

[No. 112, September Term, 1976.]

*Decided February 9, 1977.*

The cause was argued before SINGLEY, SMITH, DIGGES, LEVINE, ELDRIDGE and ORTH, JJ., and ROBERT F. SWEENEY, Chief Judge of the District Court of Maryland, specially assigned.

*Gerald Langbaum, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General,* and *Jon F. Oster, Deputy Attorney General,* on the brief, for appellant.

*E. Stephen Derby,* with whom was *Victor R. Marsh, Jr.,* on the brief, for appellee.

SINGLEY, J., delivered the opinion of the Court.

In this appeal, Comptroller of the Treasury, Income Tax Division (the Comptroller) urges us to reverse an order of the Circuit Court for Baltimore County which had in turn affirmed an order of the Maryland Tax Court. The appellee, Diebold, Incorporated (Diebold), has filed a cross appeal contending that both the Tax Court and the circuit court erred in holding that a portion of its claimed tax refund was barred by limitations. The Comptroller has moved to dismiss the cross appeal on the ground that no appeal will lie from an order of the Comptroller dismissing, as barred by limitations, a claim for a refund of taxes.

The controversy is pivoted upon the proper interpretation and application of Maryland Code (1957, 1975 Repl. Vol.),

Art. 81, § 316 which deals with the allocation of corporate income:

"The net income of a corporation (domestic or foreign) shall be allocated in the following manner:

"(a) *Income from real estate or tangible personal property.* — Income from ground rents, rents and royalties and other income from real estate or tangible personal property permanently located in this State (less related expenses) shall be allocated to this State; and such income from real estate or tangible personal property permanently located outside this State (less related expenses), shall be allocated outside this State.

"(b) *Capital gains and losses.* — 1. Capital gains and losses from sales of real property located in this State are allocable to this State. 2. Capital gains and losses from sales of tangible personal property are allocable to this State if: (A) the property had a situs in this State at the time of the sale; or, (B) the taxpayer's commercial domicile is in this State and the taxpayer is not taxable in the state in which the property had a situs. 3. Capital gains and losses from sales of intangible personal property are allocable to this State if the taxpayer's commercial domicile is in this State.

"(c) *Business income.* — The remaining net income, hereinafter referred to as business income, shall be allocated to this State if the trade or business of the corporation is carried on wholly within this State, but if the trade or business of the corporation is carried on partly within and partly without this State so much of the business income of the corporation as is derived from or reasonably attributable to the trade or business of the corporation carried on within this State, shall be allocated to this State and any balance of the business income shall be allocated outside this State. The portion of the business income derived

from or reasonably attributable to the trade or business carried on within this State may be determined by separate accounting where practicable, but never in the case of a unitary business; however, where separate accounting is neither allowable nor practicable the portion of the business income of the corporation allowable to this State shall be determined in accordance with a three-factor formula of property, payroll and sales, in which each factor shall be given equal weight and in which the property factor shall include rented as well as owned property and tangible personal property having a permanent situs within this State and used in the trade or business shall be included as well as real property. The Comptroller of the Treasury shall have the right, in those cases where circumstances warrant, to alter any of the above rules as to the use of the separate accounting method or the formula method, the weight to be given the various factors in the formula, the manner of valuation of rented property included in the property factor and the determination of the extent to which tangible personal property is permanently located within the State![1]

Diebold, incorporated in Ohio in 1876, is engaged in the manufacture and sale of bank and office equipment, primarily vault doors, burglar alarms and automated files. It does business in all 50 states. During the years 1966-1969, both inclusive, Diebold owned and operated Young & Selden as one of its four divisions. Young & Selden was not separately incorporated. Its principal business activity was the printing of checks and other business forms in Maryland. It did business in approximately 20 states.

Diebold's Maryland corporate income tax returns for 1966 and 1967 were due to be filed on or before 15 March 1967 and

---

1. The statute has remained unchanged since the years 1966-1969, here involved.

15 March 1968, respectively, but Diebold requested and the Comptroller granted extensions to 15 July 1967 and 15 July 1968, respectively. Diebold made timely filing of a single return, in its own name for each of these years within the period of the extensions.

For the year 1969, for the first time, Diebold filed two returns, one in the name "Diebold, Incorporated, except Young & Selden Division"; the other in the name "Young & Selden Division, Diebold, Incorporated," and claimed a refund of $16,860.48. Because Diebold had determined that the filing of two returns in this fashion generated a lesser amount of tax, on 14 July 1970, two similar amended returns were filed for the year 1966 and a refund of $6,286.31 was claimed. On 7 May 1971, two amended returns were filed for the year 1967, and a refund of $5,296.27 was claimed. On 14 July 1970, two amended returns for the year 1968 were filed, and a refund of $15,196.85 was claimed. Thus, the total of the refunds claimed was $43,639.91.

The amended returns for the years 1966, 1967 and 1968 and the returns as originally filed for the year 1969 utilized the three-factor formula permitted by Code, Art. 81, § 316 (c), and the tax liability was derived from separate income and expense accounts maintained for Diebold and Young & Selden to which the formula was applied in separate schedules filed with the returns.

The Comptroller took the position that because Young & Selden was not a separately incorporated subsidiary, Diebold conducted a unitary business and that its Maryland income tax must be computed by the application of the three-factor formula to its aggregate property, payroll and sales, and not by the application of the formula to separate accounts for Diebold and Young & Selden. As a consequence, the claims for refunds were denied. Additionally, the Comptroller found that the refunds claimed for the years 1966 and 1967 were barred by limitations.

Diebold appealed to the Maryland Tax Court, which concluded that the refunds claimed for the years 1966 and 1967 were barred by limitations, but that the separate

filings made for the years 1968 and 1969 were proper, and allowed the refunds claimed.

The Comptroller entered an appeal and Diebold filed a cross appeal in this Court from the order of the Tax Court which was transferred by this Court to the Circuit Court for Baltimore County. *See Shell Oil Co. v. Supervisor*, 276 Md. 36, 343 A. 2d 521 (1975). The circuit court affirmed the Tax Court order in all respects, and an appeal and a cross appeal to the Court of Special Appeals followed. We granted certiorari before the case came on for hearing in that court.

### The Comptroller's Appeal

The Comptroller's argument is essentially this: Article 81, § 316 (c) is similar to the statutes of other states providing for the allocation of corporate income, *see Underwood Typewriter Co. v. Chamberlain*, 254 U. S. 113 (1920). It is recognized that separate accounting should be employed in the case of separate businesses and the formula method in the case of unitary businesses, Keesling and Warren, *The Unitary Concept in the Allocation of Income*, 12 Hastings L. J. 42, 43-44 (1960).

Whether a business can be regarded as unitary may hinge on unity of ownership and management, *Butler Brothers v. McColgan*, 315 U. S. 501, 508 (1942); on whether the business operated within a state is dependent upon or contributes to the business operated without the state, *Edison California Stores, Inc. v. McColgan*, 30 Cal. 2d 472, 183 P. 2d 16 (1947); on whether major policy decisions are made within or without the state, *Chase Brass and Copper Co. v. Franchise Tax Board*, 10 Cal. App. 3d 496, 95 Cal. Rptr. 805 (1970), or on whether income is commingled and used for purposes of the business, *Johns-Manville Products Corp. v. Commissioner of Revenue Administration*, 115 N. H. 428, 343 A. 2d 221 (1975), *appeal dismissed*, 423 U.S. 1069, 96 S. Ct. 851 (1976).

Finally, the Comptroller argues, even if the Diebold-Young & Selden business is not unitary, there is no warrant in the Maryland law, *see* Art. 81, § 280A (a), for the treatment of a manufacturing division, not itself

incorporated, as a separate entity for income tax purposes, Keesling, *A Current Look at the Combined Report and Uniformity in Allocation Practices*, 42 J. Tax 106 (Feb. 1975).

Diebold counters with the argument that there was evidence that Young & Selden was engaged in a different business; that Young & Selden had its own officers and sales force, and maintained its own payroll and accounting system, from which the Tax Court could conclude that the business of Diebold was not unitary. It points also to the further finding of the Tax Court that Diebold had met its burden of showing that the application of the three-factor formula in the fashion urged by the Comptroller is unreasonable and arbitrary.

We begin by noting that judicial review of decisions of the Maryland Tax Court is severely limited. Code (1957, 1969 Repl. Vol.) Art. 81, § 229(1) provided:

> "the circuit court . . . shall determine the case upon the record of the Maryland Tax Court . . . ; provided, that, unless such order is erroneous as a matter of law or unsupported by substantial evidence appearing in the record it shall be affirmed." [2]

We have held that the standard by which a result reached by the Tax Court is reviewed is whether a reasoning mind reasonably could have reached the factual conclusion which that agency reached, *Fairchild Hiller Corp. v. Supervisor of Assessments*, 267 Md. 519, 521, 298 A. 2d 148, 149 (1973). The application of this test need not and must not be either judicial fact finding or a substitution of judicial judgment for agency judgment.

The Tax Court found that under Diebold's amended returns for the years 1966-1969, to Diebold's Maryland business would be attributed 1.3155%, 1.5915%, 1.5538% and 1.3222% of its total income, respectively, for the years in question. Accepting the Comptroller's view would have

---

2. The present provision, which is substantially similar, may be found in Maryland Code (1957, 1975, Repl. Vol., 1976 Cum. Supp.) Art. 81, § 229 (o).

developed figures of 3.65%, 4.11% and 4.07% for the years 1966, 1967 and 1968.

After reviewing the cases relied on by both parties, the Tax Court concluded that Diebold and Young & Selden did not comprise a unitary business, because unity of use, management, ownership and purchasing was lacking, but rather that there were two separate businesses and that the application of the unitary approach would produce an exaggerated tax liability to the State of Maryland.

Returning again to the narrow limits imposed upon our review, we cannot say that a reasoning mind could not have reasonably reached this factual conclusion on the evidence, nor do we perceive any error of law. We shall therefore affirm the Tax Court's order as to the 1968 and 1969 returns.

### The Cross Appeal

Diebold contends, and we think correctly, that the Tax Court erred when it concluded that Code Art. 81, § 310 (b) mandated that the three-year period of limitations ran from the date when the 1966 and 1967 returns were originally due to be filed (15 March 1967 and 15 March 1968) and not from the date to which extensions were granted under Art. 81, §§ 305 and 306.

As we construe the language of § 310 (b):

> "Any claim for refund made under and pursuant hereto . . . shall be filed within three years from the date the return was due to be filed . . . ."

we think that it is clearly contemplated that limitations will run from the date of any extension. Obviously, that part of § 310 (c) which requires the State to pay interest on any refunds ". . . accounting from the date the return . . . was due to be filed . . ." would not be interpreted as requiring the payment of interest from the original due date, rather than from the date to which an extension has been granted.

Moreover, we have held that the Maryland income tax law is to be construed in a fashion conformable to the Internal Revenue Code to which it is inextricably keyed, *Marco Associates, Inc. v. Comptroller*, 265 Md. 669, 674, 291 A. 2d

489, 492 (1972); *Katzenberg v. Comptroller*, 263 Md. 189, 204, 282 A. 2d 465, 472 (1971). To hold that limitations under the Maryland law are to be calculated in a manner other than that prescribed by the Internal Revenue Code, 26 U.S.C. § 6511 (a) would produce the anomalous result that a refund of U. S. income taxes might not necessarily produce a refund of Maryland income tax, despite the fact that the Maryland tax in some circumstances is predicated on the U. S. tax.

In consequence of the view which we take of the limitations issue, it is unnecessary to consider the Comptroller's motion to dismiss Diebold's cross appeal.

> *Order of Maryland Tax Court affirmed in part and reversed in part; case remanded to the Circuit Court for Baltimore County for further remand to Maryland Tax Court for entry of an order conformable to the views herein expressed; costs to be equally divided between the appellant and the appellee.*