COMPTROLLER OF THE TREASURY *v.* IRVING MACHIZ

[No. 766, September Term, 1978.]

*Decided April 16, 1979.*

The cause was argued before GILBERT, C. J., and MOYLAN and COUCH, JJ.

*Gerald Langbaum, Assistant Attorney General,* with whom

was *Francis Bill Burch, Attorney General,* on the brief, for appellant.

*L. Paige Marvel,* with whom were *Marvin J. Garbis* and *Garbis & Schwait, P.A.* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

This case teaches three lessons: 1) former tax collectors do not like to pay income taxes any more than other taxpayers; 2) there is wisdom in not representing yourself in tax disputes; and 3) that the findings of fact made by the Maryland Tax Court are binding on a circuit court if those findings are "supported by substantial evidence." Md. Code Ann. art. 81, § 229 (o).

The record before us shows that the appellee, Irving Machiz, a former district director for the Internal Revenue Service, and later a paid consultant to the appellant, the Comptroller of the Treasury for the State of Maryland, challenged the appellant's decision that appellee was liable for the payment of State income taxes for the year 1974. Machiz avers that he was a resident of Florida at that time and, therefore, is not properly chargeable for the payment of Maryland income taxes.

Initially, a hearing officer of the appellant resolved the question of Machiz's tax liability *vel non* adversely to the self-represented appellee. Machiz then appealed, *pro se,* to the Tax Court where he fared no better than he had before the hearing officer. Aggrieved by the action of the Tax Court, Machiz, still acting as his own advocate, appealed to the Circuit Court for Baltimore County. There, the parties litigant submitted the matter to the court on a "Stipulation of Facts." That stipulation, quoted textually, provided:

> "Petitioner, Irving Machiz, 63 years of age, became a resident of Maryland in 1937 and resided in Maryland on a year round basis until 1972. In 1943, he commenced employment with the Internal Revenue Service, ultimately becoming District Director of Internal Revenue Service for the District

of Maryland, a position which he held until his retirement on June 30, 1972. Mr. Machiz is a certified public accountant. At the time of his retirement, he received offers to join various accounting firms. When he advised them that he was not interested in working full time, only one firm, Berman, Goldman and Ribakow (B.G. & R.), Certified Public Accountants of Columbia, Maryland remained interested. He advised B.G. & R. that he only wanted to be involved three or four months of the year at the most. He advised them that he could be contacted even while in Florida where he was then intending to purchase a home. On that basis, a limited partnership arrangement was entered into which lasted four years until June 30, 1976.

In the fall of 1972, Mr. Machiz purchased a condominium home in Miami Beach, Florida. He stated that he spends an average of seven months of the year in Florida, four months in Baltimore and one month travelling; for the year at issue, 1974, he stated that he definitely spent more than 183 days in Florida.

At the time of his retirement and for approximately fourteen years prior thereto, Mr. Machiz resided with his wife, Mildred, at 7401 Campfield Road in Baltimore County, Maryland. They did reside in their Campfield Road home for a period of time in calendar year 1974. In January, 1974, Mr. Machiz registered to vote in the State of Florida. Petitioner's Exhibit 1, a Florida voting registration card for the year 1976-77, indicated that he registered in Florida on January 17, 1974. Records of the Baltimore County Election Board (Respondent's Exhibit No. 2) reflect that Mr. Machiz's name was removed from the list of eligible Baltimore County voters on March 4, 1974, the reason being his registration in Florida. The same Exhibit reflected that Mildred Machiz terminated her Baltimore County voting status in June, 1975

and registered to vote in Florida at approximately the same time. Respondent's Exhibit 1, Mrs. Machiz's Baltimore County voting registration record reflects that she did vote in Maryland in the 1974 election.

Mr. Machiz attempted to introduce into evidence a notice received in 1975 directing him to report for jury duty in Florida. Respondent's objection to admission of this notice was sustained. Mr. Machiz did introduce as Petitioner's Exhibit 2 a Florida Intangible Property Tax Return for the year 1974. Mr. Machiz testified that he was physically in the State of Florida on the last day of the years 1972, 1973, 1974 and 1975. On April 30, 1974, Mr. Machiz entered into an exclusive listing agreement with Grempler Realty, Inc. for the sale of his Baltimore home. The listing agreement was terminated in September with no purchase offers having been received, despite a lowering of the price asked. Petitioner's Exhibit 3 is a letter confirming the listing agreement. In April of 1976, the home was listed with another realtor, D.H. Blum. The home was still listed as of the date of the hearing at the Maryland Tax Court, July 7, 1976; despite weekly advertisements in two local newspapers, no bids have been received. Testimony also established the following:

(a) In 1974, Mr. Machiz applied for and received a Florida homestead exemption.

(b) Mr. Machiz maintained his Maryland driver's license throughout the year 1974 and still had the license in July, 1976.

(c) Mr. Machiz's automobile was registered in the State of Maryland.

(d) Mr. Machiz did not obtain a Florida driver's license. His automobile was used primarily for business purposes in connection with his association with the Maryland accounting firm of Berman, Goldman and Ribakow.

(e) Mr. Machiz did maintain bank accounts in Maryland during the year 1974.

(f) Mr. Machiz's wife, who has lived with him throughout their marriage and who has spent the same amount of time in Maryland and Florida as has Mr. Machiz, maintained her Maryland driver's license and Maryland automobile registration for the year 1974.

(g) Mr. Machiz did not know if he retained phone service at his home in Maryland throughout the year 1974.

(h) Mr. Machiz's name was listed in the Maryland phone directory for the year 1974.

(i) Mr. Machiz had been a member of the Beth Israel Synagogue Congregation in Baltimore County but does not remember when that membership was discontinued.

(j) Mr. Machiz belonged to no country clubs or social clubs in 1974.

(k) For the year 1974, Mr. Machiz was in Maryland for the months of May, June, September, October and part of November.

In addition to the preceding contacts, testimony at the Maryland Tax Court established the following business contact.

(a) During the year 1974, in addition to his association with B.G. & R., Mr. Machiz was a consultant for the State of Maryland, Comptroller of the Treasury, and delivered twelve lectures during that year for personnel in the Comptroller's office.

(b) Mr. Machiz was paid a fixed semi-monthly sum during the course of his partnership with B.G. & R. The terms of his partnership required that he be available throughout the year for consulting work. He was on occasions called while in Florida. On one occasion, as a result of such a call, he came to Maryland, but this did not occur in the year 1974.

(c) B.G. & R. paid dues for Mr. Machiz for

membership in the Maryland Association of Certified Public Accountants and the American Institute of Certified Public Accountants. B.G. & R. also listed Mr. Machiz in the phone book as a member of their firm and paid his membership fee in the advertising club. Mr. Machiz conducted no business activities in the State of Florida and was not associated with any accounting firm there.

The amount of the assessment for the year 1974 was $2,245.60, plus interest. It is agreed, however, that the assessment included interest income of $899 attributable to United States Government H Bond and that this amount is not taxable and should be subtracted from the total additional income upon which the assessment was reached."

The circuit court, in a "Memorandum Opinion," reversed the Tax Court. The circuit court opined "that the Maryland Tax Court was erroneous in interpreting the Statute [Md. Ann. Code art. 81, § 279 (i)] as a matter of law. The [circuit] Court finds as a matter of law that the taxpayer, Irving Machiz, intended to abandon his Maryland domicile and was, in fact, domiciled in Florida during the year 1974."

Obviously unwilling to accept that setback, the Comptroller appealed to this Court. Mr. Machiz then ceased acting as his own attorney and retained counsel to represent his interests in the appeal. For reasons that we shall hereafter note, his recognition of his need for the services of an attorney came too late, because counsel could not undo that which Machiz had done, namely, virtually stipulate himself into a position from which his lawyer cannot extricate him.

Determination of Machiz's taxpaying status for the year 1974 involved a construction by the Maryland Tax Court of Md. Ann. Code art. 81, § 279 (i) which defines a "resident" as: "an individual domiciled in this State on the last day of the taxable year, and every other individual who, for more than six months of the taxable year, maintained a place of abode within this State, whether domiciled in this State or not. . . ." The thrust of that section, as Judge Singley noted

in *Comptroller v. Lenderking,* 268 Md. 613, 616, 303 A. 2d 402, 404 (1973), is bifurcated in that it reaches *either* those persons domiciled in Maryland on December 31 of the taxable year or those individuals who maintained a place of abode in Maryland for at least six (6) months of the taxable year. *See also Evans v. Comptroller,* 273 Md. 172, 328 A. 2d 272 (1974); *Wood v. Tawes,* 181 Md. 155, 28 A. 2d 850 (1942), *cert. denied,* 318 U. S. 788 (1943).

The Tax Court, based on the facts before it, found that notwithstanding Machiz's efforts to sell his Baltimore County property, "his maintenance of a home in . . . Florida, and his registering to vote in Florida," he was domiciled in Maryland on the last day of 1974.

The Tax Court grounded its domiciliary findings upon determining that Machiz owned a home in Maryland, he conducted all of his business activities in Maryland, his two motor vehicles were registered in Maryland, he possessed a Maryland driver's license, the majority of his bank accounts were in Maryland, and his wife was registered to vote in this State. Such a finding falls within the ambit of *Shenton v. Abbott,* 178 Md. 526, 530, 15 A. 2d 906, 908 (1940), that domicile means "that place where a man has his true, fixed, permanent home, habitation and principal establishment, without any present intention of removing therefrom, and to which place he has, whenever he is absent, the intention of returning." We believe that on the facts before the Tax Court a reasoning mind could logically reach the decision that agency reached.

In accordance with Md. Rule B 7 (d), "the parties, with the approval of the agency" prepared the stipulation which, along with the exhibits received into evidence by the Tax Court, constituted the record on appeal to the circuit court.

Md. Ann. Code art. 81, § 229 (o) provides:

> "In any case, the circuit court for the county or the Baltimore City Court shall determine the matter upon the record made in the Maryland Tax Court.[1]

---

1. The parties, with the approval of the Tax Court, may, pursuant to Md. Rule B 7 (d), agree upon a statement of the case which statement then becomes the "record on appeal."

> The circuit court or Baltimore City Court shall affirm the Tax Court order if it is not erroneous as a matter of law and if it is supported by substantial evidence appearing in the record. In other cases, the circuit court or Baltimore City Court may affirm, reverse, remand, or modify the order appealed from."

The Court of Appeals, in *Comptroller v. Diebold, Inc.,* 279 Md. 401, 369 A. 2d 77 (1977), interpreted then Md. Ann. Code (1957, 1969 Repl. Vol.) art. 81, § 229 (l). That section provided in pertinent part:

> "The circuit court of the county or the Baltimore City Court of Baltimore City, [*sic*] shall determine the case upon the record of the Maryland Tax Court and may affirm, reverse, remand or modify the order appealed from; provided, that, unless such order is erroneous as a matter of law or unsupported by substantial evidence appearing in the record, it shall be affirmed."

The similarity between the language of former section 229 (l) and present section 229 (o) is evident.

The Court said that the standard by which the "result reached by the Tax Court is reviewed is whether a reasoning mind reasonably could have reached the factual conclusion which that agency reached. *Fairchild Hiller Corp. v. Supervisor of Assessments,* 267 Md. 519, 521, 298 A. 2d 148, 149 (1973). *The application of this test need not and must not be either judicial fact finding or a substitution of judicial judgment for agency judgment."* (Emphasis supplied.) 279 Md. at 407, 369 A. 2d at 81.

A review of the stipulation presented to the circuit court instantly discloses that there was evidence presented to the Tax Court from which a "reasoning mind reasonably could have reached the factual conclusion that the agency reached." *Id.* Consequently, the circuit court should not have substituted its judgment for that of the Tax Court.

Although the judge in the circuit court couched his holding in a manner that appears to be calculated to avoid conflict

with *Diebold,* he has, nevertheless, transgressed upon the fact finding of the Tax Court. Labeling judicial fact finding as "a matter of law" camouflages the impermissible fact finding, but it does not render it invisible, nor does it change its nature in any manner. Just as a "[r]ose is a rose is a rose is a rose," [2] so too, a fact is a fact is a fact is a fact. Obfuscation of facts by miscalling them matters of law serves only to confuse the issue, not solve it.

We hold that the Circuit Court for Baltimore County erred when it substituted its judicial fact finding for that of the Tax Court. The Tax Court's findings of fact are supported by substantial evidence from which "a reasoning mind reasonably could have reached" the same factual conclusion as that agency.

> *Judgment reversed.*
> *Case remanded to the Circuit Court for Baltimore County with instructions to affirm the order of the Maryland Tax Court.*
> *Costs to be paid by appellee.*

---

2. Gertrude Stein (1874-1946) *Sacred Emily* (1913).