614 A.2d 1333

**Harvey B. MAISEL, et al.**

v.

**MONTGOMERY COUNTY, Maryland.**

No. 226, Sept. Term, 1992.

Court of Special Appeals of Maryland.

Nov. 4, 1992.

Stanley D. Abrams (M. Gregg Diamond and Abrams, West & Storm, P.C., on the brief), Bethesda, for appellants.

H. Christopher Malone, Sr. Asst. County Atty. and Anthony M. Shore, Asst. County Atty. (Joyce R. Stern, County Atty., on the brief), Rockville, for appellee.

Argued before WILNER, C.J., and GARRITY and CATHELL, JJ.

GARRITY, Judge.

Appellants, Harvey B. Maisel et al., bring this appeal from a judgment in the Circuit Court for Montgomery County (Beard, J.) affirming the Maryland Tax Court's decision to deny appellants' claim for refund of rezoning transfer taxes. They contend that the Circuit Court erred

in affirming the Tax Court's findings that the property at issue was rezoned to a "more intensive use" and was therefore subject to a six percent rezoning transfer tax.

## *Statement of Facts*

The facts are undisputed. The subject property, purchased by appellants in December 1986, consists of 4.5 acres and is located in Silver Spring. At appellants' request, the property was rezoned from the R–60 Zone (Residential, single-family) to the RT–8 Zone (Residential, townhouses) by the County Council on July 11, 1989. The R–60 Zone generally permits a maximum of 5 dwelling units per acre, but allows a maximum of 6 units per acre with moderately priced dwelling units (MPDU's). The RT–8 Zone permits a maximum of 8 dwelling units per acre.

Appellants submitted a schematic development plan in conjunction with their application for rezoning. The original plan showing 36 townhouse units, the maximum permitted in the RT–8 Zone, was rejected by the Maryland–National Capital Park and Planning Commission, as was a subsequent plan calling for 32 townhouse units on the site. The Commission eventually approved a development plan containing 27 townhouse units.

In April 1990, appellants sold the property. A six percent rezoning transfer tax of $105,300 was collected by the Division of Revenue, Department of Finance (Montgomery County) on the transfer based upon the purchase price of $1,755,000.

Appellants filed a claim for refund in the amount of $87,750, or five percent of the consideration, alleging that the regular one percent transfer tax, rather than the six percent rezoning transfer tax, was due. They based this on their decision to limit development on the property to no more than the number of townhouse units that could have been constructed under the pre-existing zoning. Montgomery County denied the claim for refund, and appellants appealed to the Maryland Tax Court.

Following a hearing, the Tax Court affirmed Montgomery County's denial of appellants' claim for refund, and appellants appealed to the Circuit Court for Montgomery County. That Court affirmed the decision of the Tax Court and this appeal followed.

## Analysis

Md.Tax–General Code Ann., § 13–532(a)(2) (1988, 1992 Cum.Supp.), provides that final orders of the Tax Court may be appealed to a circuit court. Such judicial review is, however, severely limited. *CBS v. Comptroller*, 319 Md. 687, 575 A.2d 324 (1990); *Comptroller v. Diebold, Inc.*, 279 Md. 401, 369 A.2d 77 (1977). A reviewing court must affirm the Tax Court if its order "is not erroneous as a matter of law" and if the order "is supported by substantial evidence appearing in the record." *CBS v. Comptroller, supra* at 697, 575 A.2d 324, *quoting Ramsay, Scarlett & Co. v. Comptroller*, 302 Md. 825, 834, 490 A.2d 1296 (1985).

The Court of Appeals held in *Fairchild Hiller Corp. v. Supervisor of Assessments*, 267 Md. 519, 521, 298 A.2d 148 (1973), that the standard of review of a Tax Court decision is whether a reasoning mind reasonably could have reached the factual conclusion that that agency reached. *Comptroller v. Diebold, Inc.*, 279 Md. at 407, 369 A.2d 77. Since administrative agency decisions are *prima facie* correct and carry a presumption of validity, we must review the Tax Court's decision in the light most favorable to that court. *Cox v. Prince George's County*, 86 Md.App. 179, 187, 586 A.2d 43 (1991); *Terranova v. Board*, 81 Md.App. 1, 9, 566 A.2d 497 (1989). Our role is essentially to repeat the task of the circuit court; that is, to be certain the circuit court did not err in its review. *Mortimer v. Howard Research*, 83 Md.App. 432, 575 A.2d 750 (1990); *Cox v. Prince George's County*, 86 Md.App. at 187, 586 A.2d 43 (1991).

■ Appellants argue that the six percent rezoning transfer tax provided for in § 52–21(e) of the Montgomery County Code does not apply with reference to the sale and

transfer of the instant property because, under the requirements of the Montgomery County Zoning Ordinance (Chapter 59, Montgomery County Code, 1984 ed., as amended), the subject property was not rezoned to a "more intensive use," as that term is defined in the Code. Appellants contend that the maximum number of dwelling units developable on the property before and after the rezoning is 27 units and that, therefore, as there has not been a rezoning to a more intensive use, a one percent tax should have been applied.

Appellants further asseverate that when a rezoning of property occurs through a local map amendment, the law with respect to the use and development of that property changes, particularly where, as here, an optional method rezoning occurs pursuant to § 59–H–2.5 of the Montgomery County Code (1984, as amended) and additional restrictions are imposed as to the density of development. By failing to look at the text of the RT–8 Zone, appellants contend, the County ignored the binding restrictive elements contained in the Council's approval of the rezoning amendment.

The appellee avers that the statute in issue is silent regarding any voluntary limitation, which may have in fact occurred in connection with the rezoning of the subject property, nor does it refer to the total number of dwelling units that may eventually be constructed on the rezoned property. The only comparison permitted by § 52–21(e), the appellee contends, is between the statutorily permitted densities in the various zones, not the eventual densities that can actually be constructed on the property. A comparison of the statutorily permitted densities in the R–60 and RT–8 Zones reveals that the R–60 Zone with an MPDU density bonus arguably permits a maximum of 6 dwelling units per acre, while the RT–8 Zone without any density bonus permits 8 dwelling units per acre. Appellee alleges that by allowing the construction of townhouses where none were permitted before, the rezoning of appellants' property to RT–8 intensified the use and development of the property by definition, since townhouses are inherently a more inten-

sive form of development than single-family detached homes. The rezoning tax therefore applies, according to appellees, since the "change in zone" from R–60 to RT–8 clearly permits a greater number of dwelling units.

The issue of law in this case focuses upon the proper interpretation and application of § 52–21(e) of the Montgomery County Code, which provides that the transfer tax on rezoned property is

(6) percent of the value of the consideration for any transfer of real property which, after July 1, 1971, has been rezoned to a more intensive use at the instance of the transferor, transferee, or any other person who has had or had at the time of application for rezoning a financial contractual or proprietary interest in the property, excluding the value of improvements constructed after such rezoning.... "Rezoned to a more intensive use" shall mean a *classification, reclassification or change in zone which permits a greater number of dwelling units per acre in any residential zone,* or which permits a greater number of permitted uses regardless of area in a commercial zone or industrial zone, or is from any residential zone to any commercial or industrial zone, or is from any industrial zone to any commercial zone. (Emphasis added).

The Tax Court found that the six percent rezoning transfer tax was properly collected on the transfer of appellants' property under § 52–21(e) of the Montgomery County Code. The finding was based on evidence in the record and at the hearing that appellants' property was rezoned from the R–60 Zone to the RT–8 Zone at appellants' instance while they owned the property. The Tax Court interpreted § 52–21(e) to mean that because the RT–8 Zone permits a greater number of dwelling units per acre than does the R–60 Zone, the property was rezoned to a more intensive use. In rendering his decision, Judge William B. Calvert of the Maryland Tax Court stated:

*[W]hat triggers this tax is not what you ended up with as far as limitations go when you move from one*

*zoning classification to another, but I think the tax is triggered by the very change of the zoning classification itself.*

In other words, if you are in a situation where you have a zoning classification that permits certain things and then you move to another classification that intensifies what is permitted under this zoning classification that you moved to, whether you got the benefit of it or not doesn't make any difference is the way I read this statute.

*What makes the difference is are you moving into a more intensive category than what you were in.* And I think if you are, whether or not you are able to utilize or get the benefit of each and everything that's permitted under that zone, I don't think it makes any difference. And I think that that is truly the intent of the law. (Emphasis added).

The cardinal rule of statutory construction is to ascertain and carry out the intent of the Legislature. *Lone v. Montgomery County,* 85 Md.App. 477, 502, 584 A.2d 142 (1991); *Cox v. Prince George's County,* 86 Md.App. at 190, 586 A.2d 43; *Soper v. Montgomery County,* 294 Md. 331, 449 A.2d 1158 (1982). Where the statutory language is plain and free from ambiguity, and expresses a definite and simple meaning, courts do not normally look beyond the words of the statute itself. *Lone v. Montgomery County,* 85 Md.App. at 502, 584 A.2d 142; *Giant of Md., Inc. v. State's Attorney for Prince George's County,* 267 Md. 501, 298 A.2d 427, *appeal dismissed,* 412 U.S. 915, 93 S.Ct. 2733, 37 L.Ed.2d 141 (1973); *Hunt v. Montgomery County,* 248 Md. 403, 237 A.2d 35 (1968).

We have examined the language of § 52–21(e) and hold that it is free from ambiguity. Furthermore, when we examine its legislative purpose, we find no ambiguity or inconsistency. By using the optional method of application for a local map amendment, appellants were able to intensify the development of the property in several respects while agreeing to limit one aspect of this intensification. This one aspect of intensification, density, was only limited as it

related to their property, however, and this limitation was placed on the property voluntarily by appellants.

Appellants argue that this voluntary restriction became a legislative act when the County Council adopted a resolution rezoning appellant's property. The restriction, however, did not change the provisions of the Zoning Ordinance for the RT–8 Zone, which permits more dwelling units per acre than the R–60 Zone. Therefore, the requirements for imposition of the transfer tax under § 52–21(e) have been satisfied.

■ We believe that the Tax Court was correct in giving the words of § 52–21(e) their ordinary and natural meaning by concluding that the words "change in zone which permits a greater number of dwelling units" refers to the number of dwelling units permitted by statute, rather than, as appellants allege, to the number of dwelling units that are eventually approved for construction on a particular piece of property or that may eventually be built on the property.

In essence, the appellants are asking us to create a tax exemption where none exists. Although the County Council has indeed provided for the exemption of certain transfers, the Code contains no exemption for the zoning transfer granted herein. As an example, Section 52–21(e)(1) of the Code contains an exemption for rezoning transfer tax for properties that have been rezoned from a residential zone to a Planned Unit Development Zone. That section provides that "rezoned to a more intensive use" does not include:

(1) A zoning from a residential zone to Planned Unit Development Zone under Division 59–C–7 granted after January 1, 1980, if the approved development plan, including any amendments to the plan, *does not increase the total number of permitted dwelling units* and does not permit commercial or industrial uses, provided however, that the transfer shall be subject to additional tax under this subsection if at any time an amendment to the development plan increases the total number of permitted

dwelling units or permits commercial or industrial uses. (Emphasis added).

██ A general rule of strict construction is applied in the consideration of tax exemption statutes. *Std. Properties, v. Emp. Security Bd.*, 201 Md. 1, 8, 92 A.2d 459 (1952). In case of doubt as to the intention of the Legislature, the presumption is in favor of the taxing power and the burden is on the claimant to establish his right to exemption by bringing himself clearly within the terms of the conditions imposed by the statute. *Id.; Shaughnessy v. Linguistic Society*, 198 Md. 446, 450, 84 A.2d 68 (1951); *Clarke v. Union Trust Co. of D.C.*, 192 Md. 127, 134, 63 A.2d 635 (1948).

The Tax Court found that the rezoning transfer tax must be paid when a property is transferred after being rezoned to a residential zone which statutorily permits a greater number of dwelling units than the prior zone, without reference to the number of dwelling units that may be eventually built on the property. As did the Circuit Court, we hold that Tax Court correctly interpreted the applicable law.

JUDGMENTS AFFIRMED; COSTS TO BE PAID BY APPELLANTS.