BLUE, J.
 

 Although tax statutes are notoriously complex, these consolidated tax cases turn on the construction of two simple statutory words: “due date.” The problem can be very briefly stated. General Statutes § 12-222 (b) provides that an annual corporation business tax return is “due on or before the first day of the
 
 *93
 
 fourth month next succeeding the end of the income year.” The return of a corporation operating on a calendar year basis is, for example, due on April 1. The commissioner of revenue services (commissioner) is, however, permitted to “grant a reasonable extension of time for filing a completed return . . . .” General Statutes § 12-222 (c). If it turns out that a completed return has erroneously reported too much income or too few deductions, General Statutes § 12-225 allows a corporation to file an amended return “within three years from the due date of the return . . . .” The operation of § 12-225 is clear if no extension is granted for the filing of the original return. But what if an extension
 
 is
 
 granted? Does the three year period of § 12-225 begin to run on the original due date or the extended due date? That is the question presented here.
 

 Bilco Company (Bilco) and Minnesota Mining and Manufacturing Company (3M) were respectively granted six month extensions of time to file their corporation business tax returns. Each corporation subsequently discovered that it had paid too much tax. (The actual overpayment of tax is not a matter in dispute.) Each corporation attempted to file an amended return more than three years after the original due date for its original return but less than three years after the extended due date for that return. In each case, the refund sought was denied on the ground of untimeliness, and an appeal was duly filed in this court.
 

 In arguing that Bilco’s and 3M’s amended returns were untimely filed, the commissioner relies on a regulation, in effect since 1982, stating that “due date,” for purposes of the corporation business tax, “does not mean an extended due date.” Regs., Conn. State Agencies § 12-213-1 (a). Bilco and 3M contend that this regulation is invalid as applied because it conflicts with the plain meaning of § 12-225. It is fundamental that “ ‘[t]he power conferred to make regulations for carrying a
 
 *94
 
 statute into effect must be exercised within the powers delegated, that is to say, must be confined to details for regulating the mode of proceeding to carry into effect the law as it has been enacted, and it cannot be extended to amending or adding to the requirements of the statute itself.’ ”
 
 Loglisci
 
 v.
 
 Liquor Control Commission,
 
 123 Conn. 31, 37, 192 A. 260 (1937), quoting 12 C.J. 845; accord
 
 Chevron U.S.A., Inc.
 
 v.
 
 Natural Resources Defense Council, Inc.,
 
 467 U.S. 837, 842-43, 104 S. Ct. 2778, 81 L. Ed. 2d 694 (1984);
 
 Phelps Dodge Copper Products Co.
 
 v.
 
 Groppo,
 
 204 Conn. 122, 128, 527 A.2d 672 (1987). Although “[a] person claiming the invalidity of a regulation has the burden of proving that it is inconsistent with or beyond the legislative grant”;
 
 Travelers Ins. Co.
 
 v.
 
 Kulla,
 
 216 Conn. 390, 399, 579 A.2d 525 (1990); that burden has been carried here.
 

 A “due date,” in plain English, is “the particular day on or before which something must be done to comply with law or contractual obligation.” Black’s Law Dictionary (6th Ed. 1990). The “due date” of a return means the time by which the return must legally be filed. In the case of a calendar year taxpayer, § 12-222 (b) fixes that date as April 1, but subsection (c) of the same statute gives the commissioner authority to grant a reasonable extension of time for filing a completed return. If an extension is granted until October 1, the due date of the return is October 1. This is plain English that every taxpayer would instinctively understand. Any other construction would not only be stilted but would be a trap for the unwary. The “due date” of a return “is that date when it is actually required to be filed.”
 
 Langer v. Gray,
 
 73 N.D. 437, 444, 15 N.W.2d 732 (1944); accord
 
 Comptroller
 
 v.
 
 Diebold, Inc.,
 
 279 Md. 401, 408, 369 A.2d 77 (1977) (also finding “due date” unambiguously to mean “extended due date”); see also
 
 Conoco, Inc.
 
 v.
 
 Iowa Dept. of Revenue & Finance,
 
 477 N.W.2d
 
 *95
 
 377, 380 (Iowa 1991) (finding “due date” to be ambiguous but concluding that, for policy reasons, it should be construed as meaning “extended due date”).
 

 The commissioner argues that this common sense interpretation of § 12-225 is to some extent contradicted by the terminology of the immediately following statute. General Statutes § 12-226 provides that “[a]ny company whose income, profits or earnings are changed, adjusted or corrected for any income year by any official of the United States government, or any agency thereof’ shall submit to the commissioner an affidavit disclosing such changes or adjustments “on or before the due date or extended due; date of its next return . . . .” In § 12-226, the terms “due date” and “extended due date” are obviously used to refer to different things. In the absence of other circumstances, this terminology would ordinarily lead to a conclusion that the phrases in question are terms of art and that other provisions of the tax code should be interpreted with the distinction between these terms in mind. A careful review of the relevant legislative history, however, reveals not only that the “due date or extended due date” language of § 12-226 sheds no light on the “due date” language of § 12-225 but that the legislature, in enacting § 12-225, affirmatively intended the term “due date” in that statute to mean “extended due date.”
 

 Section 12-225 actually consists of two parallel provisions. The first half of § 12-225 deals with supplemental returns. A company that reports too little income or too many deductions in its original return is required to file a supplemental return “within three years from the due date of the return . . . .” The second half of § 12-225 — the half in question here — deals with amended returns. As already explained, if a company reports too much income or too few deductions in its original return, it may file an amended return. This must also be done “within three years from the due date of
 
 *96
 
 the return.” The term “due date” plainly means the same thing in each of these provisions.
 

 As it happens, the “supplemental return” half of § 12-225 is considerably older than the “amended return” half. In fact, the first half, with somewhat different terminology, can be traced to the original Corporation Business Tax Act of 1935 (1935 act). Section 426c of the 1935 act required companies which had originally reported too little income or too many deductions to file supplemental returns “within such reasonable time limit as the tax commissioner may prescribe . . . .” General Statutes (Cum. Sup. 1935) § 426c. That same section contained the precursor of the modem § 12-226. A company whose federal return was corrected by the United States was obliged to file a supplemental return “within ten days after receipt of the notification of such change or correction . . . .” General Statutes (Cum. Sup. 1935) § 426c.
 

 Section 426c was changed significantly in 1943. See
 
 Charlton Press, Inc.
 
 v.
 
 Sullivan,
 
 153 Conn. 103, 110-11, 214 A.2d 354 (1965). In order fully to understand the legislative change of 1943, however, it is necessary to describe two other provisions of the 1935 act. Section 423c — the precursor of the modem General Statutes § 12-22 la — addressed a problem concerning what was then called allocation and is now called apportionment. If the commissioner felt that a multistate taxpayer had allocated too little of its income to this state, he could challenge the allocation “within one year of the filing of the return . . . .” General Statutes (Cum. Sup. 1935) § 423c. Section 431c — the precursor of the modem General Statutes § 12-233 — addressed the examination of returns by the commissioner. The commissioner was required to examine a return and notify the taxpayer of any errors therein “as soon as possible after the filing of such return . . . .” General Statutes (Cum. Sup. 1935) § 431c.
 

 
 *97
 
 These provisions contrasted significantly with the corresponding provisions of the Internal Revenue Code of 1939. 53 Stat. 1 (1939). The Internal Revenue Service was permitted to assess any federal deficiency “within three years after the [federal] return was filed . . . .” Id., 86. Similarly, a taxpayer that had overpaid its federal taxes could file a claim for a refund “within three years from the time the [federal] return was filed . . . .” Id., 91. In 1943, the state tax department asked the Connecticut legislature to amend the 1935 act to conform to the three year period established by federal law. See “An Act Concerning Chapter 66B of the 1935 Cumulative Supplement To The General Statutes. The Corporation Business Tax Law” Conn. Joint Standing Committee Hearings, Finance, 1943 Sess., p. 26. Otto P. Steege, of the state tax department, told the legislature in the hearings on Senate Bill No. 606 before the Joint Standing Committee on Finance that the department had a particular problem with the returns of multistate taxpayers and wanted a legislative change “to coincide with the [three year period used by the] Federal Government.” Id., p. 31.
 

 The legislature responded to this request by enacting File No. 363, “An Act Concerning the Corporation Business Tax” (1943 act) (codified in General Statutes [Cum. Sup. 1943] § 291g et seq.). The Joint Standing Committee on Finance reported that the purpose of the 1943 act was “to conform with the Federal Law.” Conn. Joint Standing Committee Hearings, supra, p. 169.
 

 Three provisions of the 1943 act are relevant here. Section 3 amended § 423c of the 1935 act to allow the commissioner to challenge an allocation “within
 
 three
 
 years of the filing of the return.” (Emphasis added.) Section 5 amended § 426c of the 1935 act to require companies which had originally reported too little income or too many deductions to file supplemental returns “within
 
 three years from the due date of the
 
 
 *98
 
 return.” (Emphasis added.) Finally, § 6 amended § 431c of the 1935 act to allow the commissioner to examine a return and notify the taxpayer of any errors therein
 
 “within three years
 
 after the
 
 due date for the
 
 filing of such return.” (Emphasis added.)
 

 This somewhat lengthy history has been necessary to show the origin of the “due date” language at issue in the present case. The 1943 act nowhere uses the term “extended due date.” That phrase was not added to § 12-226 until over two decades later. See Public Acts, Spec. Sess., February, 1965, No. 428. The term “due date” is, in contrast, a term of considerable significance in the 1943 act. That term is used not only in § 5, which deals with the filing of supplemental returns by taxpayers, but in § 6, which deals with the examination of returns by the commissioner. Moreover, the avowed purpose of all of these changes was to conform to federal law, which was, and still is; see 26 U.S.C. § 6511 (a); keyed to the actual filing date of the return.
 

 This review makes it possible to determine exactly what the legislature intended when it used the term “due date” in the 1943 act. Section 424c of the 1935 act gave the commissioner the same power to “grant a reasonable extension of time for filing [a] return” that he continues to enjoy. Given this power to grant extensions, it is implausible that the 1943 legislature could have intended “due date” to mean “original due date.” In cases of extension, that meaning would have given the commissioner less than three years after the actual filing of a return to examine that return and to require a supplemental return. Such a meaning would not only have frustrated the commissioner but would have failed to conform to the very federal law that had inspired the change in the first place. This analysis shows as conclusively as is possible in such matters that when
 
 *99
 
 the term “due date” was used in the 1943 act, it meant “extended due date” in cases where an extension was granted.
 

 It is also clear that when the provision allowing amended returns that is now at issue was added to § 12-225 by Public Acts 1967, No. 82, the legislature did not intend to alter this meaning. In the first place, the “due date” language of the amended return provision of § 12-225 exactly tracks the “due date” language of the supplemental return provision of that statute. In the second place, the sponsors of the 1967 act in both the House and Senate expressly stated that the purpose of the act was to put both the commissioner and the taxpayer “on an equal footing.” 12 H.R. Proc., Pt. 2, 1967 Sess., p. 569, remarks of Representative James P. McLoughlin, 12 S. Proc., Pt. 2, 1967 Sess., p. 709, remarks of Senator William J. Verriker. This again makes it as clear as can be expected in such matters that the 1967 legislature, like the 1943 legislature, intended “due date” to mean “extended due date” in cases where an extension was granted.
 

 The legislative history of § 12-225 strengthens the conclusion that a sense of the English language in any event compels, that “due date” unambiguously means “extended due date” when an extension is, in fact, granted. But even if the statute were to be considered ambiguous, this review is important because “[statutes are to be construed in light of their legislative history, their language, the purpose they are to serve, and the circumstances surrounding their enactment.”
 
 Hartford Electric Light Co.
 
 v.
 
 Water Resources Commission,
 
 162 Conn. 89, 97, 291 A.2d 721 (1971).
 

 A number of other considerations point to the same conclusion. First, “ [statutory provisions establishing remedies so that the taxpayer may recover taxes
 
 *100
 
 unjustly collected have generally been liberally construed.” 3A J. Sutherland, Statutory Construction (Singer Ed. 1992) § 66.07. To the extent that the amended return portion of § 12-225 is ambiguous, it should be construed in favor of the taxpayer.
 

 Second, a number of structural considerations support the conclusion that “due date” in § 12-225 means “extended due date.” To paraphrase William Simon, a tax system should look like someone designed it on purpose. See The Oxford Dictionary of American Legal Quotations (1993) p. 401. To begin with, § 12-222 (c) allows the commissioner to “grant a reasonable extension of time for filing a completed return.” The commissioner could, consistently with this statute, grant an extension of time of one, two, or even three years for the filing of a completed return if such an extension were reasonable in a particular case. (The six month extensions actually granted by the commissioner are wholly attributable to custom rather than statute.) The existence of this power is in considerable tension with a construction of “due date” in § 12-225 as meaning “original due date.” If, on the other hand, “due date” is construed as meaning “extended due date” in cases where an extension is granted, the commissioner’s power to grant reasonable extensions is unproblematic.
 

 In addition, as has already been seen, the term “due date” is not unique to the amended return portion of § 12-225. It is also used in the exactly parallel supplemental return provision of the same statute, which enhances the state’s ability to collect the corporation business tax. Perhaps even more importantly, the term is used throughout the entire state tax code in a variety of provisions wholly uncovered by § 12-213-1 (a) of the Regulations of Connecticut State Agencies (which is limited on its face to the corporation business tax). In administering the dividends, interest income, and capital gains tax, for example, the commissioner must
 
 *101
 
 determine whether an excess payment has been made “within three years after the due date of any return . . . .” General Statutes § 12-514. A similar provision exists in the case of admissions, cabaret and dues tax. General Statutes § 12-549. These provisions are most naturally interpreted by construing “due date” to mean “extended due date.”
 

 Moreover, in at least one important provision of the General Statutes, the term “due date” must be interpreted as meaning “extended due date” in order to avoid complete chaos and absurdity. The Uniform Administrative Procedure Act requires an agency hearing a contested case to “render a final decision within ninety days following the close of evidence or the due date for the filing of briefs, whichever is later . . . .” General Statutes § 4-180 (a). If “due date” in this provision were interpreted as meaning “original due date,” no agency would dare to grant even the most modest extension of time for the filing of briefs in even the most meritorious of circumstances. Here, as elsewhere, a construction of “due date” as meaning “extended due date” is both sensible and natural.
 

 It is also important to consider the impact of the federal tax code. Title 26 of the United States Code § 6511 (a) allows a taxpayer to file a claim for credit or refund of an overpayment of any federal tax “within 3 years from the time the return was filed or 2 years from the time the tax was paid, whichever of such periods expires the later.” In the
 
 Conoco, Inc.
 
 and
 
 Die-bold, Inc.
 
 cases cited earlier, the highest courts of Iowa and Maryland found it appropriate to refer to this federal provision in construing local equivalents of § 12-225, because their respective state tax codes were extensively linked to the Internal Revenue Code. See
 
 Conoco, Inc.
 
 v.
 
 Iowa Dept. of Revenue & Finance,
 
 supra, 477 N.W.2d 380;
 
 Comptroller
 
 v.
 
 Diebold, Inc.,
 
 supra, 279 Md. 408-409.
 

 
 *102
 
 As is the case in Iowa and Maryland, Connecticut’s tax law is in many places expressly linked to the Internal Revenue Code. There are numerous references to the Internal Revenue Code in the corporation business tax code alone. See, e.g., General Statutes § 12-213 (defining “fiscal year” with reference to Internal Revenue Code); § 12-214 (providing for imposition of tax); § 12-217 (providing for deductions from gross income);
 
 First Federal Savings & Loan Assn.
 
 v.
 
 Connelly,
 
 142 Conn. 483, 493, 115 A.2d 455 (1955), appeal dismissed, 350 U.S. 927, 76 S. Ct. 305, 100 L. Ed. 811 (1956) (noting “incorporation by reference of the federal law into the state law”). As already discussed, the “due date” language of § 12-225 was enacted as part of a bill, the 1943 act, specifically designed to bring the procedural aspects of the corporation business tax into conformity with federal law. Multistate taxpayers are, if anything, more prevalent now than they were in 1943, and this aspect of the 1943 act retains considerable practical importance for the commissioner and taxpayers alike.
 

 For the reasons set forth above, § 12-213-1 (a) of the Regulations of Connecticut State Agencies, which provides that “due date” does not mean “extended due date” is inconsistent with both the plain meaning of § 12-225 and the underlying structure of the state tax code. The amended returns submitted by Bilco and 3M were not untimely.
 

 Judgment shall enter for the plaintiffs. The parties shall submit proposed orders within ten days of the date of this opinion.