AVCO MANUFACTURING CORPORATION *v.* WILLIAM F. CONNELLY, TAX COMMISSIONER

SUPERIOR COURT       HARTFORD COUNTY       FILE No. 96169

Memorandum filed March 16, 1955.

*Pullman, Comley, Bradley & Reeves,* of Bridge-port, for the plaintiff.

*John J. Bracken,* attorney general, and *Walter T. Faulkner,* assistant attorney general, of Hartford, for the defendant.

THIM, J. The plaintiff challenges the validity of the defendant's assessment of a sales and use tax deficiency which, including interest to May 27, 1953, is in the amount of $76,954.29. The assessment was made on personal property purchased by the plaintiff while it was performing contracts with the United States for the air force. The taxes were levied and the assessment was made under the provisions of chapter 104 of the General Statutes.

The plaintiff claims the sales and use taxes were improperly assessed for the following reasons: 1. The transactions were sales to the United States government and within the exemption provided by subparagraph (a) of § 2096. 2. The transactions were sales which this state is prohibited from taxing under the constitution of the United States and within the exemption provided by § 2096 subparagraph (b). 3. If the exemptions do not apply, the purchases by the plaintiff must be construed as being for resale to the government in the regular course of business and therefore not subject to sales and use taxes. 4. The assessment made as to all interstate sales is erroneous because there was no storage, use or other consumption in this state by the plaintiff within the meaning of chapter 104.

In defending the validity of the assessment, the defendant claims (1) there is no exemption under subparagraphs (a) and (b) of § 2096 and (2) the property purchased by the plaintiff was not purchased for resale within the meaning and intent of chapter 104.

On January 31, 1951, the United States air force awarded the plaintiff a letter contract for production of R—1820 engines, and this contract was superseded by a definitive contract entered into as of February 4, 1952.

The United States air force awarded the plaintiff letter facilities (machinery and equipment) contract AF33(038)20785, which was accepted by the plaintiff on February 10, 1951. Pursuant to the contract the government furnished to the plaintiff a plant at Stratford, Connecticut, formerly known as the "Chance Vought Plant," owned by the government and in addition provided the plaintiff with certain other facilities. The letter contract authorized the plaintiff to go forward with the work to be per-

formed. This contract was superseded by definitive contract #AF33(038)20785, entered into as of April 10, 1952, retroactive to February 10, 1951.

Early in 1951 the plaintiff obtained orders from the General Electric Company for the production of components for the J—47 jet engines being produced by General Electric Company for the air force. Under date of April 30, 1951, the plaintiff was awarded by the government letter facilities contract #AF33(038)25718, which provided for furnishing or acquiring facilities and which was superseded by definitive contract #AF33(038)25718, entered into as of June 17, 1952, and retroactive to April 30, 1951.

Commencing March 9, 1951, and during the year 1951, the plaintiff occupied the government-owned plant at Stratford. This plant and all other facilities provided under plaintiff's facilities contracts with the government were furnished or acquired during the year 1951 solely for defense production of R—1820 engines for the United States air force and J—47 engine components under subcontracts from General Electric Company under its prime contracts with the United States air force.

The plaintiff received no fee or profit in connection with the acquisition of any facilities under the facilities contract. Under the contracts some facilities were acquired in interstate commerce from vendors outside of this state and other facilities were acquired from Connecticut vendors and deliveries were made within this state.

The defendant assessed the plaintiff sales and use taxes with respect to acquisitions in 1951 of facilities under the contracts. The parties stipulated that this appeal shall be construed to apply only to the assessment by the defendant of sales and use taxes on purchases and/or use, storage and consumption of "facilities." No assessment was made against

the plaintiff on facilities originally owned and furnished by the government.

The parties have either stipulated to or conceded most of the narration of facts, before mentioned.

The examination of the contracts, the exhibits and the testimony of witnesses clearly indicates that the objective of the government was the production of aircraft engines and parts and the delivery of them to the air force for use during the Korean emergency. Also it is apparent that the government intended to own the plant, the facilities and equipment installed in the buildings. In addition to facilities directly furnished by the government, the plaintiff was required to acquire other facilities for the government to be used in this plant. Provisions in the contract required certain government employees to administer and supervise many of the operations at the plant and the plaintiff (contractor) was required to follow certain procedure when acquiring facilities. The armed services procurement regulations also applied in the administration of all applicable contracts.

Some of the pertinent provisions of chapter 104 of the General Statutes are the following:

"Sec. 2092. THE SALES TAX. (1) IMPOSITION AND RATE OF USE TAX. . . . For the privilege of selling tangible personal property at retail a tax is hereby imposed upon all retailers at the rate of two per cent of the gross receipts of any retailer from the sale of all tangible personal property sold at retail in this state. . . ."

"Sec. 2095. THE USE TAX. (1) IMPOSITION AND RATE OF USE TAX. . . . An excise tax is hereby imposed on the storage, use or other consumption in this state of tangible personal property purchased from any retailer . . . for storage, use or other consumption in this state at the rate of two per cent of the sales price of the property. (2) LIABILITY FOR TAX. Every person storing, using or otherwise consuming in this state tangible personal property purchased from a retailer is liable for the tax. . . ."

"Sec. 2096. EXEMPTIONS. Taxes imposed by this chapter shall not apply to the gross receipts from the sale of and the storage, use or other consumption in this state with respect to the following items: (a) THE UNITED STATES, THE STATE OR SUBDIVISIONS. Sales of

tangible personal property to the United States, the state of Connecticut or any of the political subdivisions thereof, or to its or their respective agencies. (b) FEDERAL EXEMPTIONS. Sales of tangible personal property which this state is prohibited from taxing under the constitution or laws of the United States."

"Sec. 2097. EXEMPTIONS FROM USE TAX. (1) WHERE SALES TAX APPLICABLE. The storage, use or other consumption in this state of property, the gross receipts from the sale of which are required to be included in the measure of the sales tax, is exempted from the use tax."

## Some of the pertinent provisions of the contracts are the following:

"Letter Contract #AF 33(038)-20503.

"15. The Government, under a separate Facilities contract will (i) furnish to the Contractor or (ii) authorize the Contractor to fabricate or acquire certain facilities required for the production of engines of the type called for hereunder at a rate of 225 per month. Said Facilities contract will also authorize the Contractor to convert the Chance-Vought plant at Stratford, Conn. for the purpose of performing this and subsequent contracts. Costs incurred in such conversion, not reimbursable to the Contractor under said Facilities contract shall be considered as proper costs under this Letter Contract."

"Definitive Contract #AF 33(038)-20503.

"Part IV—Facilities

"(a) It is agreed that the Government under Special Facilities Contracts No. AF 33(038)-20785 and AF 33(038)-25718 will for the performance of this contract (i) provide the Government owned plant formerly known as 'Chance Vought'; (ii) authorize the Contractor to manufacture, supply or acquire for the account of the Government or will furnish to the Contractor such machinery and equipment (facilities) as are agreed between the parties to be necessary for the performance of this contract; (iii) authorize the Contractor to install or have installed at Government expense all of such facilities requiring installation; (iv) authorize the Contractor to make repairs and parts replacements of facilities furnished to the Contractor by the Government, or acquired by the Contractor for the account of the Government, and upon receipt thereof to place such facilities in serviceable condition; and (v) authorize the Contractor to perform such building installation and such rehabilitation and plant rearrangement as are agreed between the parties to be necessary for the performance of this contract."

"Letter Contract #AF 33(038)-20785.

"5. You are not authorized to expend or to obligate the Government in furtherance of your performance hereunder more than $24,500,000.00 in the aggregate. Pending the execution of the defini-

tive contract, each expenditure, order, subcontract or commitment made by you in furtherance of your performance herein, if on a CPFF basis or if for an amount that shall exceed either 5% of the amount last above stated or $25,000.00 whichever is less, shall be approved by the Contracting Officer. Title to all work under this contract, completed or in the course of manufacture or assembly by you, shall be in the Government. Title to all items of facilities, materials, parts and equipment for which you will be entitled to be reimbursed under this contract or under the definitive contract shall vest in the Government (i) upon delivery to you at any point within the continental limits of the United States, or (ii) at any place or time directed by the Contracting Officer, and all such property shall remain personalty although it may be affixed to realty not belonging to the Government.

"7. All work required under this contract shall be executed in the most economical and workmanlike manner in strict conformity with the best standard practices and all material, workmanship and facilities shall be subject to inspection and test by representatives of the Government."

"Definitive Contract #AF 33(038)-20785.

"CLAUSE 4—TITLE

"A. Title to all property furnished by the Government shall remain in the Government. Title to all property purchased by the Contractor, for the cost of which the Contractor is entitled to be reimbursed as a direct item of cost under this contract, shall pass to and vest in the Government upon delivery of such property by the vendor. Title to other property, the cost of which is reimbursable to the Contractor under this contract, shall pass to and vest in the Government upon (i) issuance for use of such property in the performance of this contract, or (ii) commencement of processing or use of such property in the performance of this contract, or (iii) reimbursement of the cost thereof by the Government, whichever first occurs."

When the plaintiff acquired facilities, the purchase orders specified that shipment was to be f.o.b. the vendor's plant, and each purchase order stated "this equipment is purchased on behalf of the United States government and will be government owned." Applications for bills of lading for transporting the facilities specified that "title to property during transportation is vested in the United States government." The plaintiff paid the vendor by check for the facilities acquired and after arrival and inspection of the facilities at the plant by air force em-

ployees, the government reimbursed plaintiff for its cost in making the acquisition of personal property.

Plaintiff contends that title was never in its name because at all times it was acting as an agent of the government while it was acquiring the facilities under the contracts. If the plaintiff never had title in its name and only made purchases of the facilities as agent for the government, these sales are exempt under subparagraph (a) of § 2096. Also, if the purchases from retailers outside of this state were made by the plaintiff as agent for the government, the use tax would not be applicable.

Whether plaintiff was an agent of the government to acquire the facilities must be ascertained from the provisions of the letter contracts, the definitive contracts and the procedure it was required to follow during the time the purchases were made. In ascertaining what relationship was created, all applicable provisions of the contracts must be considered.

None of the contracts expressly appointed the plaintiff as an agent of the government and Avco (plaintiff) is referred to as the "contractor." The plaintiff negotiated the purchases and paid vendors with its own funds. No air force employee conferred with any of the vendors concerning the purchases made by the plaintiff. The vendors looked to the plaintiff for payment and invoices were sent to and in the name of the plaintiff. Except as indicated on the plaintiff's purchase orders and applications for bills of lading, the vendors were not notified that the government was involved in these transactions. The plaintiff did not represent itself to the vendors as an agent of the government and no appointment of an agent was made as in the case of *Kern-Limerick, Inc. v. Scurlock,* 347 U.S. 110, where the contract provided, "The contractor shall act as the purchas-

ing agent of the government in effecting such procurement and the government shall be directly liable to the vendors for the purchase price."

The transactions the plaintiff entered into with the vendors obligated it to pay for the purchases and plaintiff did not have authority to purchase property in the name of the government or pledge credit of the government. The transaction entered into by the plaintiff at the time it purchased a facility was a sale from a vendor, and the vendor intended to convey title to the plaintiff and not the government. The contract in the case of *Kern-Limerick, Inc.* v. *Scurlock,* supra, was different in many respects from the contracts in the present controversy. In the former case the contract provided title to the property "shall vest in the government directly from the vendor" and "the contractor shall not acquire title to any thereof [property]." In the same contract there appeared the sentence, "The vendor agrees to make demand or claim for payment of the purchase price from the government by submitting an invoice to the contractor." None of the clauses in the contracts in the present case are as clear and specific concerning the relationship the parties created.

Whether an agency should be implied depends upon the desire or intention of the principal (government) as expressed in the contracts. The procedure the plaintiff was required to follow before making purchases of personal property, the supervision at the plant by government employees, the inspection at the plant of property purchased by the plaintiff, and the provisions concerning reimbursement support the conclusion that an independent contractor relationship was created.

In claiming that title to the facilities was taken in the name of the United States government, plain-

tiff relies in part on the information appearing on the purchase orders and the bills of lading used in transporting the property. The words appearing on the purchase order were placed there at the suggestion and request of an air force employee. The contracts did not require the exact words used on plaintiff's invoices. This procedure, although some evidence on the issue as to when title passed to the government, is not controlling or conclusive. The contracts and the conduct of the parties are the real guides to be followed in deciding the issue of when title passed.

Plaintiff is also relying on the title clause in the letter contracts and definitive contracts which states that title to the property shall pass to and vest in the government upon delivery of such property by the vendor. Read literally and alone one might conclude that title to a facility should pass when a vendor made delivery to the plaintiff either in this state or outside Connecticut. To give this clause a proper and reasonable meaning it must be read together with the reimbursement clause and other pertinent provisions of the contract. The plaintiff was not entitled to be reimbursed for a facility it purchased until the property arrived at the plant in Stratford and was inspected and accepted by the government. A reasonable interpretation of the title and reimbursement clauses leads to the conclusion that title to a facility did not pass to the government until (1) the vendor made a delivery of the property, (2) an inspection is made by the government at the plant and (3) acceptance by the government. Until these events actually occurred, title to a facility purchased was in the plaintiff. By completing step one title was in the plaintiff until the fulfillment of the other two requirements.

The plaintiff had the burden of establishing an agency relationship and the claimed exemptions.

*Connecticut Light & Power Co.* v. *Walsh*, 134 Conn. 295. The plaintiff has not established that it was acting as an agent of the United States government when it purchased the facilities, and it necessarily follows that it is not entitled to exemptions under subparagraphs (a) or (b) of § 2096.

If the sales of the facilities are held to be sales to the plaintiff, another claim is being made that under § 2091 (4) the purchases must be construed as being for resale to the government in the regular course of business. Section 2094 concerns resale certificates, the use of a certificate and the liability of a purchaser who gives a certificate and makes use of the property other than retention. Section 2091 (4) provides: "A 'retail sale' or 'sale at retail' shall mean and include a sale for any purpose other than resale in the regular course of business of tangible personal property."

The facilities purchased by the plaintiff were to be used by it at the plant at Stratford. Section 2094 clearly has reference to tangible personal property which the purchaser at the time of purchase intends to sell in the regular course of business. The transactions involved in this case do not come within the scope of § 2094. The property purchased by the plaintiff was to be used for the production of engines and components. Avco (plaintiff) was the purchaser and as an independent contractor it was to be reimbursed for purchase of equipment and work to be performed. The sales by the plaintiff to the government in Connecticut were not in the regular course of business.

If the court comes to the conclusion that title to the facilities purchased from outside Connecticut passed to the plaintiff, it is the claim of the plaintiff that the use tax does not apply because no use was made of the property before title passed to the gov-

ernment. Under § 2091, "use" includes the exercise of any right or power over tangible personal property incident to the ownership of that property, except that it does not include the sale of that property in the regular course of business.

To obtain additional revenue and accomplish equality in this state, the legislature decided a use tax was necessary. Chapter 104 contemplates the consummation of sales of personal property outside Connecticut and the use tax is intended to apply to these transactions. The definition of use is not intended to make ownership the sole test in determining taxable use. The exercise of any right or power over tangible personal property incident to the ownership is a "use." Further legislative intent not to restrict use to ownership is found in § 2096, where it provides "an excise tax is hereby imposed on the storage, use and consumption in this state of tangible personal property."

Any right or power exercised over tangible personal property is subject to § 2095. *Southern Pacific Co.* v. *Gallagher,* 306 U.S. 167; *Henneford* v. *Silas Mason Co.,* 300 U.S. 577. The plaintiff purchased and took title to facilities from retailers outside Connecticut and these transactions were subject to the use tax.

The sales of the facilities to the plaintiff within Connecticut were subject to the sales tax.

The assessment made by the defendant is valid and should be permitted to stand.

The appeal is dismissed.