COMPTROLLER OF TREASURY *v.* AMERICAN CAN COMPANY
[No. 17, October Term, 1955.]

204

*Decided November 7, 1955.*

*Motion for rehearing filed December 5, 1955, denied December 7, 1955.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Ambrose T. Hartman, Assistant Attorney General,* with whom were *C. Ferdinand Sybert, Attorney General,* and *Edward F. Engelbert, Staff Attorney, Retail Sales Tax Division,* on the brief, for the appellant.

*Norwood B. Orrick* and *Andre W. Brewster,* with whom were *Venable, Baetjer & Howard* on the brief, for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal under Code (1951), Art. 81, sec. 348 is from an order of the Baltimore City Court reversing the Comptroller's denial of the refund of a tax paid under protest. The question presented is whether the Maryland Use Tax can properly be imposed upon raw materials, purchased in another state by a manufacturer and there transformed into machinery and replacement parts, when such machinery and replacement parts are subsequently imported into Maryland for use in manufacturing operations of the same manufacturer in its plants in this State. The facts are stipulated and may be briefly stated.

The appellee, a New Jersey corporation qualified to do business in Maryland, engages in two types of manufacturing, the first being the manufacture of specialized machinery and replacement parts to make food containers, and the second being the manufacture of such containers. The company has no plants in Maryland of the first type, but some of the machinery and parts manufactured outside the State are leased or sold to other manufacturers in the canning and packing industries in Maryland and

elsewhere, who make their own containers. . The taxability of such transactions is not here involved or contested. It also operates plants of the second type, at least two of which are located in Maryland, and supplies them with the necessary machinery and parts for making containers which are sold to the trade. During the period here in question certain replacement parts manufactured by the Company in another state were delivered to its Maryland can-making plants upon requisition. It is not contended that this constituted a sale, and it is conceded that the parts were not readily obtainable, or obtainable at all, in Maryland, since the Company has exclusive ownership of the special jigs, patterns, dies and designs through which the parts are made, and the various processes and products are protected by patents owned and used exclusively by it. On the other hand, it is conceded that the Company purchases, in other states, rough metal castings, which are made by foundries from the Company's patterns, and bar metal. These materials are machined into the finished product and assembled into complete machines or retained as repair or replacement parts, but none of these manufacturing processes are performed in Maryland. The Comptroller contends that the metal constituting the raw materials, purchased outside the State, is taxable when delivered for use in Maryland in the finished form of replacement parts, in an amount representing the cost of the raw materials. It is conceded that such raw materials are readily obtainable in Maryland.

Code (1951), Art. 81, sec. 369, provides: "(Imposition of tax.) An excise tax is hereby levied and imposed on the use, storage or consumption in this State of tangible personal property purchased from a vendor within or without this State on or after the effective date of this Act, for use, storage or consumption within this State. The tax imposed by this section shall be paid by the purchaser * * *." Sec. 370 provides: "(Exemptions.) The use, storage or consumption in this State of the follow-

ing tangible personal property is hereby specifically exempted from the tax imposed by this sub-title: * * * (f) Tangible personal property not readily obtainable in Maryland which is stored, used or consumed in this State by a person engaged in * * * manufacturing * * *, if such tangible personal property enters into the processing of or becomes an ingredient or component part of the product * * * which is manufactured * * *." (Sec. 370 (f) was repealed by Ch. 332, Acts of 1955, but was in effect when the transactions in the instant case took place.) Rule 62 of the Comptroller interprets or expands this qualifying clause by declaring that "property will be considered as entering into the processing of the product * * * which is manufactured * * * if the property is employed either directly or indirectly in the manufacturing * * * of property for sale * * *." Sec. 379 provides that to prevent evasion of the tax it shall be presumed "that the tangible personal property sold by any person for delivery in this State, however made or carried, is sold for use, storage or consumption in this State. A like presumption shall apply to all tangible personal property delivered without this State and brought into this State by the purchaser thereof."

It is perfectly clear that the finished product is the only property actually used in Maryland. The raw materials would be utterly useless for the purpose of making containers. To interpret the use of the finished product as a use of the raw materials disregards the fact that before the use began the raw materials had been converted into tangible personal property of a different nature and utility. When the conversion took place, the component parts ceased to be raw materials and became a finished product. We find nothing in the language of the taxing Act that would justify the dissolution of the product into its component parts, despite the mathematical principle that the whole is the sum of the parts. The raw materials which were purchased lost their identity before they were brought into Maryland and the property used in Maryland was not

purchased. We think the tangible personal property that is purchased can only be taxed where it is brought into Maryland for use in its pristine form, and not where it is converted into tangible personal property of an entirely different character. If we assume that the raw materials were purchased for use here, it is nevertheless true that they lost their identity before they were brought into Maryland and put into use. The presumptions set up in sec. 379 do not seem to reach this problem, but merely relate to deliveries.

Our construction is based upon the plain meaning of the language employed in sec. 369. The tax fails because the raw materials purchased were never used as such in Maryland, and the finished product was not purchased here or elsewhere. It is unnecessary to invoke the exemption in sec. 370, and the rule of strict construction of a tax statute is applicable, rather than the similar rule as to tax exemption. Cf. *Comptroller v. Rockhill, Inc.*, 205 Md. 226, 234. But it may be observed that the finished product would have been exempt because not readily obtainable, even if it had been purchased. Thus, the imposition of the tax would seem to penalize the Company for making the finished product instead of buying it. The language of sec. 370, although now repealed, seems to indicate that the Legislature recognized that manufacture connotes a change in substance. As was said in *H. M. Rowe Co. v. Tax Commission*, 149 Md. 251, 258: " 'Manufacture' * * * is a plain word in every day use, and as ordinarily understood means the process of converting some material into a different form adapted to uses to which in its original form it could not be so readily applied * * *."

The Comptroller stresses the fact that the use tax is complementary to the sales tax, as noted in *Comptroller of Treasury v. Smith*, 205 Md. 408, 411, and cases cited. He argues that if raw materials are purchased to manufacture a finished product in Maryland they are taxable at that stage, unless the finished product is produced for sale under sec. 368 (d) (2), and if the tax

can be avoided by manufacture outside the State, a loop-hole will be opened in the tax law. The argument overlooks the change in the character of the tangible personable property sought to be taxed in the latter case. Nor does it follow that because the use tax is complementary to the sales tax it must have a universal application. In neither case is the use of the finished product subject to tax at its enhanced value. It is not true, as the Comptroller states, that "all property which ultimately finds its way into this State is subject to the use tax with the exception of property held for sale * * * or property which will be subject to manufacture prior to sale." The use tax, in its complementary function, requires both a purchase and a use. But the short answer to the argument is that the function of closing loopholes belongs to the Legislature and not the courts.

The Comptroller strongly relies upon the case of *Chicago Bridge & Iron Co. v. Johnson,* 119 P. 2d. 945 (Cal.). In that case a California taxpayer manufactured storage tanks in another state which it sold and erected in California. It was held by the Supreme Court that it was subject to a use tax measured by the cost of the raw materials of which the tanks were composed. It would seem that it might well have been liable for a sales tax on the finished product, as was recognized by an intermediate court in the later case of *General Electric Co. v. State Board of Equalization,* 244 P. 2d 427 (Cal.). We do not find the reasoning of the California Supreme Court persuasive. The decision relies heavily upon the loophole argument and brushes aside the change in the character of the finished product as a mere matter of form. We do not so regard it.

Since our decision rests upon the construction of the Maryland statute it is unnecessary to discuss the points raised by the appellee that if the tax is imposable it would violate both the commerce clause and the Fourteenth Amendment of the United States Constitution.

*Order affirmed, with costs.*