## COMPTROLLER OF TREASURY *v.* SMITH

[No. 21, October Term, 1954.]

410

*Decided November 12, 1954.*

The cause was argued before BRUNE, C. J., and DELA-PLAINE, COLLINS, HENDERSON and HAMMOND, JJ.

*Charles McC. Mathias, Jr., Assistant Attorney General,* and *Edward F. Engelbert, Staff Attorney, Retail Sales Tax Division,* with whom was *Edward D. E. Rollins, Attorney General,* on the brief, for the appellant.

*Waldo Burnside* for the appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment of the Circuit Court for Prince George's County reversing an assessment of use tax by the Comptroller upon the price, or aggregate value, of an asphalt plant purchased by the appellee, for use in Maryland, from The Simplicity System Company of Chattanooga, Tennessee. The question presented is whether the Comptroller's assessment is supportable, upon the facts before him, by a true construction of the Maryland statute.

Code (1951), Art. 81, sec. 369, imposes a tax on the use in Maryland of tangible personal property purchased within or without the State, but sec. 370 (a) exempts from the use tax property upon which a retail sales tax has been paid to the State of Maryland. It is thus complementary to the retail sales tax, and one of its chief functions is "to remove the temptation of buyers to place their orders in other States in the effort to escape payment of the tax on local sales". *Miller Brothers Company v. State,* 201 Md. 535, 546, reversed on other grounds in *Miller Bros. Co. v. Maryland,* 347 U. S. 340. See also *Compt. of Treasury v. Crofton Co.,* 198 Md. 398. Section 370 (f) exempts from the use tax "Tangible personal property not readily obtainable in Maryland which is stored, used or consumed in this State by a person engaged in the business of rendering services, or manufacturing, compounding for sale, profit or use of any article, substance or commodity, if such tangible personal property enters into the processing of or becomes an ingredient or component part of the

product or service which is manufactured, compounded or furnished * * *."

To aid in the administration of the use tax law, the Comptroller promulgated Rule 62, which provides in part: "If a retail dealer, factory representative, distributor or agent located in this State sells substantially the same kind of tangible personal property which is used for the same purpose, then other like property will be deemed readily obtainable within this State without regard to its name, trademark, patent or copyright." For the purposes of this case, it is conceded that an asphalt plant; if readily obtainable in Maryland, would be subject to the tax, and that it would be exempt from the tax if not readily obtainable here. It also seems to be conceded that Rule 62 was within the Comptroller's power of definition. Cf. *John McShain, Inc. v. Comptroller*, 202 Md. 68, 73, *Suburban Propane Gas Corp. v. Tawes*, 205 Md. 83, 87, and *Comptroller of Treasury v. M. E. Rockhill, Inc.*, 205 Md. 226, 232-233. We think the Comptroller's definition is not beyond the intent and purpose of the statutory language. In *Peoples Gas and Elec. Co. v. State Tax Comm.*, 238 Iowa 1369, 28 N. W. 2d 799, 806, in dealing with a similar rule promulgated under a similar statute, the court said: "It is clear this provision of the rule is designed to effectuate the purpose of the statute to protect Iowa retailers. Protection of Iowa dealers means full protection, which includes protection from arming out-of-state sellers of *competitive equipment* with a two per cent advantage.

"We determined the converse of this proposition in *Dain Mfg. Co. v. Iowa State Tax Comm., supra,* 237 Iowa 531, 22 N. W. 2d 786, aside from the rule. In that case the goods readily obtainable in Iowa were not of equal quality or were not of equal precision standard. We there stated an article is not readily obtainable in Iowa unless it can be procured in kind and quality fairly equivalent to the article purchased outside."

At the hearing before the Comptroller in the instant case, the appellee testified that he was in the business

of mixing and selling asphalt and decided to purchase a "batch-type" plant. He had previously used a "continuous mix" plant, but specifications of the District of Columbia (since changed) called for a batch-type plant. He decided on the Simplicity plant because he thought it was more durable and because it "had a double-shell drier". He investigated the Cummer plant and the Hetherington & Berner plant, but rejected them because they had only single-shell driers, and "they would not do it as economically and as fast as the double-shell drier". The function of any drier is to heat the mixture and remove moisture from the sand and gravel placed in the mixing container. He admitted that other batch-type plants could be obtained in Maryland, but not with the double-shell feature. He admitted that at the time he purchased the Simplicity plant, any batch-type plant would be acceptable to meet the specifications of the District of Columbia, where he was making deliveries. All batch-type plants have drying systems incorporated in them, to heat the aggregates as well as to remove the moisture. Heat is supplied by an oil burner. In the Simplicity plant, the aggregates pass from an outer to an inner shell, where they are superheated; in other plants the aggregates pass straight through the cylinders.

Mr. John Cross, vice president of Elphinstone, Inc., manufacturer's agent in Maryland for Hetherington & Berner, testified that that manufacturer made an asphalt mixing plant of the batch type; that they were the first manufacturers of that type plant; and claim their style of drier is the best in the field. He testified that he had sold one plant in Maryland to the Contee Sand and Gravel Co., from which asphalt is delivered to both Maryland and the District of Columbia, meeting required specifications. He also stated that the Cummer plant was a competitor, and Cedar Rapids, with agents in Baltimore, made another competing plant.

The State contends that the trial court, in finding that the single-shell type of batch mix plant was not, in the court's judgment, substantially the same as the plant

purchased, exceeded its authority under Code (1951), Art. 81, sec. 348, which limits the appeal to questions of law only. It is clear that the Comptroller's findings of fact are final, and the court cannot properly substitute its own judgment. However, questions of fact, in this type of case, shade into mixed questions of law and fact, and courts may consider the facts at least for the purpose of ascertaining whether there is evidence to support a legal conclusion that necessarily involves the drawing of a line.

It is undisputed that the various makes of batch-type plants all operate on the same general principle, manufacture or compound the same product, and are in actual competition. It is clear that the appellee's preference for the Simplicity plant was not based on any previous experience with a batch-type plant. It may be noted that advertising circulars of the Simplicity and Hetherington & Berner plants, offered in evidence, each make claims of durability, consistently high production, and operating economy, based on alleged special or unique features. Probably the same thing would be true of any other articles of tangible personal property sold in competition with other standard brands. It is natural for a manufacturer to claim, and honestly believe, that his product is the best. If a claim of special features or advantages were the only test, the door would be opened to claims of uniqueness that would defeat the purpose of the statute, which is aimed at the elimination of a tax advantage on articles of the same general character that are, in fact, sold in competition. We think the Comptroller's finding, that other asphalt plants of the batch-type, even though they lacked the special feature of a double-shell drier, were "substantially of the same kind of tangible personal property which is used for the same purpose", was both justified by the evidence and a correct interpretation of the applicable rule of law.

*Judgment reversed, with costs.*