BALTIMORE FOUNDRY & MACHINERY CORPORATION *v.* COMPTROLLER

[No. 28, October Term, 1956.]

*Decided December 6, 1956.*

The cause was argued before BRUNE, C. J., and COLLINS, HENDERSON, HAMMOND and PRESCOTT, JJ.

*Nicholas G. Penniman, III,* and *John G. Wharton,* for appellant.

*Stedman Prescott, Jr., Assistant Attorney General,* and *Edward F. Englebert, Counsel for Retail Sales Tax Division,* with whom was *C. Ferdinand Sybert, Attorney General,* on the brief, for appellee.

HENDERSON, J., delivered the opinion of the Court.

This appeal is from a judgment of the Baltimore City Court affirming a denial by the Comptroller of a claim for refund of sales tax paid under protest by the appellant. The tax in question was imposed upon the purchase by the appellant of certain patterns subsequently used by it in the manufacture of steel castings. The appellant contends that it is not liable for payment of the tax on the ground that the patterns were purchased for resale and in fact resold to its customers.

The facts are not in dispute and may be briefly summarized. It was shown that the foundry business of the appellant was conducted in this manner. Upon receipt of an order for a casting from one of its customers, if a pattern is not supplied by the customer, the appellant places an order for the pattern with one of two pattern makers. After obtaining a price from the supplier, it quotes a firm price for the pattern to its customer, in which a profit is included. The patterns are usually made of wood and when delivered by the supplier are used to shape the desired product in a flask containing sand which is baked into a crust. The pattern is then removed and hot metal is poured into the flask and hardened into the desired shape. The pattern can be used repeatedly until it is worn out. In each case the pattern is purchased in the first instance by the appellant, but is resold to the customer at a substantial profit and billed separately from the steel product. Sometimes the patterns are delivered to the customer along with the manufactured product; sometimes they are stored for the customer's account, upon the customer's request and in the expectation of further orders.

Exhibits filed in the record show that some time usually elapses between the dates when the patterns are billed to the appellant and billed by the appellant to its customers. There may be a time lag varying from a few days to two months. However, in sixteen instances the exhibits show that customers were billed by the appellant before the dates when it was billed by the pattern makers. The treasurer of the appellant testified that the appellant had a joint or dual purpose in buying patterns, for resale at a profit and to enable it to make the castings which it sells at a profit. She testified that "Many times, shortly after a pattern is received in our foundry, before it is even put into production, the customer is billed." The record does not disclose the particular instances in which the billing of the customer antedated the beginning of production, or at what stage of production any particular billing occurred. It is perhaps inferable that in some instances the patterns were used in production before they were billed to the customers, but that in no instance was the billing subsequent to the delivery of the finished product.

Code (1951), Art. 81, sec. 320 (f) defines "Retail sale" and "sale at retail" to include "all sales of tangible personal property to any person for any purpose other than those in which the purpose of the purchaser is to resell the property so transferred in the form in which the same is, or is to be received by him, or to use or incorporate the property so transferred, as a material or part, or other tangible personal property to be produced for sale by manufacturing, assembling, processing or refining." The tax imposed by sec. 321 is "For the privilege of selling certain tangible personal property at retail as defined above * * *." It may be observed that the exclusion of tangible personal property purchased for the purpose of resale in its original form, or for the purpose of incorporation into a finished product, is by force of the definition and not by inclusion in the exemptions set out in sec. 322. Sales in the categories mentioned are simply not within the scope of the taxing statute. Thus the rule of strict construction of an exemption does not apply, but the rule is applicable, that, where there is doubt as to its scope, a tax statute should be construed most strongly in favor of the citizen and against

the State. *Comptroller v. Rockhill, Inc.,* 205 Md. 226, 234; *Comp. of Treas. v. American Can Co.,* 208 Md. 203, 208.

It is undisputed that the appellant, at the time it placed orders for the patterns in question, had a definite purpose and commitment to resell them to its customers. But it also had a purpose to use the patterns for the manufacture of the finished products to be sold as a separate item. The appellee argues that the exclusion cannot apply unless the sole and only purpose of the purchaser is to resell the property in the same form. The appellant argues that the exclusion is not defeated by a collateral purpose to facilitate the production and delivery of the finished product. This poses a difficult question of construction, on which the authorities do not shed much light. We may assume that a purchase for the purpose of immediate use, with the intention of resale in the indefinite future would not satisfy the statute. In *Kirk v. Johnson,* 99 P. 2d 279 (Cal. App.), it was held by an intermediate appellate court that a purchase of dairy cows to be used for milking purposes was not a sale for resale, even though it was proposed to ultimately sell the cattle for slaughter, after they had been milked for an average period of two years. Nor would we be disposed to differ with the conclusion of the New York court in *Jacobs v. Joseph,* 126 N. Y. S. 2d 274, that the purchase of race horses was taxable, even though they were subsequently run in claiming races and ultimately resold.

On the other hand, in the recent case of *Comptroller v. Aerial Products,* 210 Md. 627, 640, we held that a purpose to use certain property as licensee, after the Government had acquired title, did not render it taxable under the Maryland Act, at least where no use of the property was made or contemplated prior to the resale and transfer of title. In that case the contract fixed the passage of title to the Government as contemporaneous, with delivery by the supplier to the contractor, although the latter seems to have been reimbursed on monthly invoices. We also noted in that case that the legislative intent in limiting the imposition of the tax to retail sales was to impose the tax on the final purchaser or ultimate consumer and to avoid a pyramiding of the tax. It seems to be conceded in the instant case that

the appellant has collected the tax on the full resale price of the patterns as well as the finished product.

The case of *United Aircraft Corp. v. O'Connor*, 107 A. 2d 398 (Conn.), was distinguished in the *Aerial* case, and is distinguishable here. In that case the court construed the Government contract as a contract for engineering services in the development of experimental engines. The items going into the engines were not resold but were treated as an element in the cost of services rendered. In the case of *Avco Manufacturing Corporation v. Connelly*, 113 A. 2d 364 (Conn.), a Superior Court case that was apparently not appealed, the court held that facilities purchased by a contractor with the Government were not resold "in the regular course of business" and hence were subject to the use tax, even though the contractor was subsequently reimbursed for its costs. To the extent that this case may be considered as recognizing that use as a licensee, subsequent to the passage of title to the Government, would support a sales or use tax, it is inconsistent with our holding in the *Aerial* case and we decline to follow it.

Perhaps the closest analogy to the problem in the instant case arises in cases dealing with the resale of containers, although in many states the matter is covered by express statutory provisions regarding containers and especially returnable containers. In *District of Columbia v. Seven-Up Washington, Inc.*, 214 F. 2d 197, certiorari denied 347 U. S. 989, the question arose under a statute similar to ours, as to the taxability of bottles, cases and cartons used by a bottler in its business of selling soft drinks. The court held that the sales of cartons were not taxable, but that the bottles and cases were. The court pointed out that the latter were sold at or below cost, and at a nominal charge which was refundable on return of the containers, and that this was not a sale in the ordinary sense, but a device to obtain return of the containers for further use, although in the form of a resale and repurchase. On the other hand, in *State v. Reynolds Metals Company*, 83 So. 2d 709, 711 (Ala.), it was held that reels on which wire was wound, billed separately to the customer at cost, were not taxable, even though returnable. In *American Molasses Co. of New York v. McGoldrick*, 22 N. E. 2d 369 (N. Y.), it

was held by a divided court in the Appellate Division that sales of jars and bags used as containers were not taxable, even though they were purchased to facilitate the sale of the contents, rather than resale as an article of commerce. See also *Evans v. Memphis Dairy Exchange,* 250 S. W. 2d 547 (Tenn.) and *Consolidated Paper Co. v. Nims,* 10 N. W. 2d 833 (Mich.).

In the instant case there is no doubt that the resales were profitable and real, and were in all cases contracted for prior to beginning of production. We think the fact that it is not possible, on this record, to determine that title passed in all cases prior to the beginning of production is not controlling. The purpose to resell was manifested and a resale price quoted in every instance contemporaneous with the placing of the order for the patterns. Construing the statute in a light most favorable to the taxpayer, and in the light of its manifest purpose to limit the tax to retail sales and relieve the wholesalers and manufacturers, we think the appellant has made out a case for exclusion from the tax sought to be imposed and is entitled to refund.

*Judgment reversed, with costs,*
*and case remanded.*