822 A.2d 1297

**FOSS NIRSYSTEMS, INC.,**

**v.**

**COMPTROLLER OF the TREASURY.**

**No. 1428, Sept. Term, 2002.**

Court of Special Appeals of Maryland.

May 6, 2003.

Donald A. Rea (J. Ronald Shiff, Stephanie D. Cohen and Gordon, Feinblatt, Rothman, Hoffberger & Hollander, LLC on the brief), Baltimore, for appellant.

Brian L. Oliner, Assistant Attorney General (J. Joseph Curran, Jr., Attorney General on the brief), Baltimore, for Appellee.

Argued before DAVIS, JAMES R. EYLER, and LAWRENCE F. RODOWSKY (Ret., specially assigned), JJ.

JAMES R. EYLER, Judge.

The Comptroller of the Treasury, appellee, assessed a use tax on certain equipment owned by Foss NIRSystems, Inc., appellant. Appellant appealed to the Maryland Tax Court, which affirmed the assessment. Appellant filed a petition for

judicial review in the Circuit Court for Montgomery County, which affirmed the tax court.

The statutory provision at issue is Md.Code (1997 Repl. Vol.), Tax–General, section 11–101($l$)(3)(ii), which provides that "use" does not include the exercise of a right or power over tangible personal property if the buyer intends to resell the property in the same form. The principal questions before us are (1) whether the tax court committed an error of law in affirming the Comptroller's interpretation of the exclusion to mean that products held for sale and demonstrated for the purpose of selling the same or similar products must be held *solely* or *primarily* for resale to come within the exclusion, (2) whether the Comptroller's interpretation constituted a change in policy requiring an administrative regulation, and (3) whether the tax court's decision was supported by substantial evidence. We shall answer the first two questions in the negative and the last question in the affirmative and, thus, affirm the judgment of the circuit court.

## Factual Background

The basic underlying facts are not in dispute. Appellant is a Delaware corporation with its principal office located in Silver Spring.[1] Appellant designs, manufactures, and sells Near–Infrared (NIR) spectrographic analyzers, also known as spectrophotometers, which are used in the chemical, polymer, pharmaceutical, food, and agricultural products industries for quantitative and qualitative analyses of substances. Generally, each spectrophotometer is comprised of a monochromator, a sampling module, and associated software. The sale of the equipment includes training for two people in the use of the equipment. The training occurs at appellant's Silver Spring offices. The equipment in question is manufactured in Maryland. Appellant has no warehouse facilities in Maryland, but its executive offices are in Maryland.

---

1. Appellant is a subsidiary of a Massachusetts corporation, which was owned by a Swedish Corporation at the time of the audit, and is now owned by a Danish corporation.

The substance that is to be tested is placed in the sampling module, and the monochromator measures the spectral range of the substance and compares it with known data stored in the software. Appellant offers nine different monochromators and twenty two different sampling modules. Appellant custom configures each spectrophotometer to suit a particular customer's needs.

The equipment in question is not sold off the shelf. Appellant offers demonstrations to potential customers, usually conducted at the customer's place of business, or appellant obtains samples of the customer's products and conducts a study at its Silver Spring offices. The latter procedure is called a "feasibility study." Such a study is sometimes followed by a demonstration at the customer's site. The purpose of a demonstration is to establish suitability for a particular application and to assist a customer in selecting the most appropriate configuration. Appellant also demonstrates the equipment at trade shows and conventions, loans it to universities and other educational institutions, and uses it in its training laboratory. One of the purposes of taking the equipment to trade shows and conventions and loaning it to educational institutions is to create future markets. Appellant performs approximately 150 demonstrations per year at a potential customer's site and approximately 70 feasibility studies per year at its headquarters. The great bulk of demonstrations occurs outside of Maryland, and the great bulk of sales occurs to customers located outside of Maryland. The equipment in question is available for sale to potential customers at all times. Customers sometimes buy the demonstration model and sometimes buy a new piece of equipment configured to meet the customer's needs.

The parties differ in their interpretation of appellant's accounting practices with respect to the equipment. The equipment is in an account called "demonstration inventory," which appellant states is a subcategory of sales inventory. While acknowledging that it depreciates the demonstration inventory internally, appellant states that it does not depreciate it for income tax purposes. Appellant also acknowledges that the

movement of items in the demonstration inventory is tracked under appellant's fixed asset tracking system but states that it is done only for the purpose of tracking and the inventory equipment is not accounted for as fixed assets. Appellee interprets appellant's accounting as treating the demonstration equipment as fixed assets.

At the time of the audit that resulted in the assessment in dispute, the demonstration inventory list reflected approximately 365 items. Of that total, 275 had been in demonstration inventory for over one year.

On April 15, 1998, appellee issued a Notice of Final Determination and assessed a use tax on appellant's demonstration inventory in the amount of $155,865.77, including interest, for the period of time from May 1, 1992, to January 31, 1997. *See* Md.Code (1997 Repl.Vol.), Tax–Gen. §§ 13–303, 13–402. On April 17, 1998, appellant appealed to the Maryland Tax Court. The items in the demonstration inventory that were challenged involved approximately $72,000 in tax. In a memorandum and order dated March 15, 2001, the tax court affirmed the assessment. In part, the tax court found:

We agree with the Comptroller that Foss's demonstration inventory was used by Foss for demonstrations to prove that the product was capable of being adapted to the customer's particular applications or use. The primary purpose of the demonstration was not to sell a specific item of equipment being demonstrated. Often the inventory was used for training or for displays and demonstrations at trade shows and conventions. In addition, the inventory was provided to universities and colleges for a number of years in order to develop new markets for the sale of Foss's equipment. Although the demonstration inventory may have been available for sale, the primary purpose of the demonstration inventory was for a purpose other than resale. The demonstration inventory was in fact being used and that use was not incidental. Approximately three quarters of the demonstration inventory provided to the Auditor had been used as demonstration equipment for over one year. The 70 feasibility studies performed each year, as

well as the 150 on-site consumer customer demonstrations performed every year, together with the training sessions held 3 out of 4 weeks every month indicate an actual use of the demonstration inventory for business purposes and not for the sale of a particular piece of equipment.

Appellant filed a petition for judicial review in circuit court. In an opinion and order dated July 23, 2002, the court affirmed the tax court's decision.

## Standard of Review

This case comes to us from the Circuit Court for Montgomery County, as a result of a petition for judicial review filed in that court. *See* Md.Code. (1997 Repl.Vol.), Tax–Gen. § 13–532 ("A final order of the Tax Court is subject to judicial review"). "Despite its name, the Tax Court is not a court; instead, it is an adjudicatory administrative agency in the executive branch of state government." *Furnitureland S. v. Comptroller of the Treasury of State,* 364 Md. 126, 138, 771 A.2d 1061 (2001) (citing *Kim v. Comptroller,* 350 Md. 527, 534, 714 A.2d 176 (1998); *Shell Oil Co. v. Supervisor,* 276 Md. 36, 43–47, 343 A.2d 521 (1975)). Thus, the applicable standard of review is an administrative one. *See Rossville Vending Mach. Corp. v. Comptroller of Treasury,* 97 Md.App. 305, 310–12, 629 A.2d 1283 (1993); *Pinder v. Dean,* 70 Md.App. 252, 255–58, 520 A.2d 1119 (1987), *aff'd,* 312 Md. 154, 538 A.2d 1184 (1988).

■ "When reviewing a decision of an administrative agency, this Court's role is 'precisely the same as that of the circuit court.'" *Stover v. Prince George's County,* 132 Md.App. 373, 380–81, 752 A.2d 686 (2000) (citing *Department of Health and Mental Hygiene v. Shrieves,* 100 Md.App. 283, 303–304, 641 A.2d 899 (1994)). We look only at "the decision of the agency, not that of the circuit court." *Lucas v. People's Counsel for Baltimore County,* 147 Md.App. 209, 225, 807 A.2d 1176 (2002) (citing *Carriage Hill Cabin John, Inc. v. Maryland Health Resources Planning Comm'n,* 125 Md.App. 183, 211, 724 A.2d 745 (1999)).

■ Administrative decisions, such as those by the tax court, receive considerable deference by reviewing courts. *See, e.g., Comptroller of Treas., Income Tax Div. v. Diebold, Inc.,* 279 Md. 401, 407, 369 A.2d 77 (1977); *accord State Dep't of Assessment & Taxation v. North Baltimore Ctr., Inc.,* 361 Md. 612, 616, 762 A.2d 564 (2000); *Supervisor of Assmts. v. Southgate Harbor,* 279 Md. 586, 595, 369 A.2d 1053 (1977). This is because "a simple but fundamental rule of administrative law ... is ... that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency." *Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 167–69, 83 S.Ct. 239, 9 L.Ed.2d 207 (1962). Section 2–102(9) of the Tax–General Article in the Maryland Code (1997 Repl.Vol.) delegates to the Comptroller the task of enforcing Maryland's sales and use tax laws.

■ Therefore, we are constrained to accept the factual findings of the agency if reasonable minds could possibly have reached the same conclusions based upon substantial evidence found in the record. *Fairchild Hiller Corp. v. Supervisor of Assessments,* 267 Md. 519, 521, 298 A.2d 148 (1973) (citing *Diebold, Inc.,* 279 Md. at 407, 369 A.2d 77 ("The application of this test need not and must not be either judicial fact finding or a substitution of judicial judgment for agency judgment.")); *accord Comptroller of Treas. v. Shell Oil Co.,* 65 Md.App. 252, 259, 500 A.2d 315 (1985); *Supervisor of Assmts. v. Fitzgerald,* 49 Md.App. 411, 419, 431 A.2d 1381 (1981); *Comptroller of Treas. v. Machiz,* 42 Md.App. 218, 225, 399 A.2d 946 (1979).

■ We may review legal conclusions *de novo,* however, to ensure that the tax court decision was not "premised solely upon an erroneous conclusion of law." *Ramsay, Scarlett & Co. v. Comptroller,* 302 Md. 825, 834, 490 A.2d 1296 (1985) (citing *Comptroller of Treasury, Income Tax Div. v. Haskin,* 298 Md. 681, 693, 472 A.2d 70 (1984)); *see also Director of Fin. v. Charles Towers Pshp.,* 104 Md.App. 710, 717, 657 A.2d 808 (1995); *Comptroller of Treas. v. World Book Childcraft*

*Int'l, Inc.,* 67 Md.App. 424, 508 A.2d 148, *cert. denied,* 307 Md. 260, 513 A.2d 314 (1986).

 We have long recognized that the interpretation of tax law can be both legal and factual in nature:

It is clear that the Comptroller's findings of fact are final, and the court cannot properly substitute its own judgment. However, questions of fact, in this type of case, shade into mixed questions of law and fact, and courts may consider the facts at least for the purpose of ascertaining whether there is evidence to support a legal conclusion that necessarily involves the drawing of a line.

*Comptroller of the Treasury v. Smith,* 205 Md. 408, 414, 109 A.2d 47 (1954) (cited in *Aerial Products,* 210 Md. 627, 632, 124 A.2d 805 (1956)). In cases of mixed questions of law and fact, we must insure that the tax court applied the law correctly to the facts as it found them. *Ramsay, Scarlett & Co. v. Comptroller,* 302 Md. at 834, 490 A.2d 1296. If the tax court decision was not erroneous as a matter of law, and its conclusion was supported by substantial evidence, we must affirm the decision. *CBS Inc. v. Comptroller of Treas.,* 319 Md. 687, 697–98, 575 A.2d 324 (1990) (citations omitted); *Diebold, Inc.,* 279 Md. at 407, 369 A.2d 77.

## Contentions

Appellant contends (1) the interpretation of the statutory provision in question is a legal question to which no deference is owed to the Comptroller or the tax court, (2) the language clearly does not require that equipment demonstrated for the purpose of selling the same or similar equipment be held *solely* or *primarily* for resale, (3) the statutory provision is an exclusion and thus should be strictly construed, (4) appellant's interpretation is supported by case law, and (5) the Comptroller's assessment of a use tax constituted a change in policy and required promulgation of a regulation as distinguished from an adjudicative determination.

The Comptroller contends (1) the interpretation of the statutory definition of "use" is a mixed question of law and

fact to which deference is owed, (2) the Comptroller's interpretation is supported by legislative history and administrative and judicial interpretation, (3) the finding that the equipment was used for purposes other than resale was supported by substantial evidence, and (4) no regulation was required because the tax was imposed pursuant to a long standing policy that any tangible personal property acquired for use and not held solely for resale is subject to the use tax.

## Analysis

### Review of Tax Court's Decision

Maryland imposes a five per cent sales tax on retail sales and a five per cent use tax on the use of tangible personal property or taxable services in the State. Md.Code (1997 Repl.Vol.), Tax–Gen. § 11–102(a). The sales and use tax provisions are complementary. *Comptroller of the Treasury v. Glenn L. Martin Co.*, 216 Md. 235, 242, 140 A.2d 288 (1958). Generally, the use tax only applies to transactions subject to the sales tax but on which no tax has been paid. *Id.*

Section 11–101(*l*) of the Tax–General Article, Md.Code (1997 Repl.Vol.), defines "use" as:

(*l*) Use.—

(1) "Use" means an exercise of a right or power to use, consume, possess, or store that is acquired by a sale for use of:

(i) tangible personal property; or

(ii) a taxable service.

(2) "Use" includes an exercise of a right or power to use, consume, possess, or store that is acquired by a sale for use of tangible personal property:

(i) for use or resale in the form of real estate by a builder, contractor, or landowner; or

(ii) except as provided in paragraph (3)(i) of this subsection, as facilities, tools, tooling, machinery, or equipment, including dies, molds, and patterns, even if the buyer

intends to transfer title to the property before or after that use.

(3) "Use" does not include:

(i) a transfer of title to tangible personal property after its use as facilities, tools, tooling, machinery, or equipment, including dies, molds, and patterns, if:

1. at the time of purchase, the buyer is obligated, under the terms of a written contract, to make the transfer; and

2. the transfer is made for the same or greater consideration to the person for whom the buyer manufactures goods or performs work;

(ii) an exercise of a right or power over tangible personal property acquired by a sale for use if the buyer intends to:

1. resell the tangible personal property in the form that the buyer receives or is to receive the property;

2. use or incorporate the tangible personal property in a production activity as a material or part of other tangible personal property to be produced for sale;

3. consume the tangible personal property directly and predominantly in a production activity by destroying, using up, or wearing out the property, other than through obsolescence, to the extent that the property cannot be rendered fit for further use in a production activity, if the consumption occurs within 1 year after the property is first used in a production activity; or

4. transfer the tangible personal property as part of a taxable service transaction; or

(iii) an exercise of a right or power over a taxable service acquired by a sale for use if the buyer intends to resell the taxable service in the form that the buyer receives or is to receive the service.

Appellant contends that inventory does not have to be held *solely* or *primarily* for resale in order to be excluded from use tax. Appellant relies primarily on the language of the statute;

*Tawes v. Aerial Products,* 210 Md. 627, 124 A.2d 805 (1956)(hereinafter "Aerial Products"); *Baltimore Foundry & Machine Corp. v. Comptroller,* 211 Md. 316, 127 A.2d 368 (1956)(hereinafter "Baltimore Foundry"); and *Comptroller v. Glenn L. Martin Co.,* 216 Md. 235, 140 A.2d 288 (1958)(hereinafter "Martin Co.").

In 1956, at the time of the *Aerial Products* and *Baltimore Foundry* decisions, the sales tax provisions appeared in Md. Code (1951, Supp.1956), art. 81, sections 320–327, and the use tax provisions appeared in Md.Code (1951, Supp.1956), art. 81, section 368. In *Aerial Products,* the question was whether machinery and equipment, acquired by the taxpayer for the production of goods for the federal government and then sold to the federal government, were subject to a sales tax. *Aerial Products,* 210 Md. at 630, 124 A.2d 805. The Comptroller imposed a sales tax, the taxpayer sued for a refund on the ground that the machinery and equipment were purchased for resale, and the Circuit Court for Cecil County allowed the refund. *Id.* at 630–31, 124 A.2d 805. There were several contracts involved in the case, but the pertinent contract provided that the machinery and equipment were to be sold to the federal government by the taxpayer and that title would pass to the government upon receipt of the items by the taxpayer, prior to the taxpayer's use of them. *Id.* at 632, 124 A.2d 805. The Court of Appeals applied art. 81, section 320(f) which, in essence, defined sale as including all sales of tangible personal property for any purpose other than when the purpose was to resell the property in the same form as received, or to incorporate the property as a part of other tangible personal property, to be produced for sale by manufacturing, assembly, processing, or refining. With respect to the case before us, we note that the substance of the language relied upon in *Aerial Products* now appears in Md.Code (1997 Repl. Vol.), Tax–Gen. section 11–101(*l* )(3)(ii), as part of the definition of "use."

At the time of the decision in *Aerial Products,* the Comptroller's factual findings were entitled to deference on judicial review. *Aerial Products,* 210 Md. at 632, 124 A.2d 805 (citing

*Comptroller of the Treasury v. Smith,* 205 Md. at 414, 109 A.2d 47). The Court held that the question of whether the machinery and equipment were subject to sales tax under the provision in question was a mixed question of law and fact and affirmed the circuit court's decision after modifying the amount of the refund. *Aerial Products,* 210 Md. at 645, 124 A.2d 805.

In *Baltimore Foundry,* a sales tax was imposed on the taxpayer's purchase of patterns used in the manufacture of steel castings. *Baltimore Foundry,* 211 Md. at 318, 127 A.2d 368. The patterns were sold by the taxpayer to its customer in addition to the steel castings. *Id.* at 318–19, 127 A.2d 368. The taxpayer argued that it was not subject to the tax because it purchased the patterns for resale. *Id.* at 318, 127 A.2d 368. The taxpayer sued for a refund, and the Circuit Court for Baltimore City affirmed the Comptroller's action. *Id.* The Court of Appeals again applied art. 81, section 320(f), as it did in *Aerial Products,* and reversed the lower court's decision. *Id.* at 319, 322, 127 A.2d 368. The Court acknowledged that the taxpayer's purpose was to resell the patterns but observed that it also intended to use the patterns to manufacture the products to be sold. *Id.* at 319, 127 A.2d 368. The Court found it significant that the sales were contracted for prior to the beginning of production, the taxpayer's purpose to resell was clearly manifested, and the resale price was quoted at the time the taxpayer ordered the patterns. *Id.* at 322, 127 A.2d 368.

In 1957, the legislature amended portions of the sales and use tax statutes. *See* S.B. 32, 1957 Md. Laws. In pertinent part, the amendment added a new subsection (6) to art. 81, section 320(f) and added a sentence to art. 81, section 368(d). Prior to the amendment, section 320(f), part of the sales tax statute, provided in part:

"Retail sale" and "sale at retail" shall mean the sale in any quantity or quantities of any tangible personal property or service taxable under the terms of this sub-title. Said term shall mean all sales of tangible personal property to any person for any purpose other than those in which the

purpose of the purchaser is to resell the property so transferred in the form in which the same is, or is to be received by him, or to use or incorporate the property so transferred, as a material or part, or other tangible personal property to be produced for sale by manufacturing, assembling, processing, or refining. For the purpose of the tax imposed by this sub-title, the term "sale at retail" shall include but shall not be limited to the following. . . . .

The five exceptions that existed prior to 1957 are not relevant to the case at bar. The 1957 amendment, however, added another exception with new subparagraph (6) as follows:

Sales of tangible personal property and/or services to any person who will use the same as facilities, tools, tooling, machinery or equipment (including, but not limited to dies, molds and patterns) even though such person intends to transfer and/or does transfer title to such property or service either before or after such person uses the facilities, tools, tooling, machinery or equipment.

The amendment to art. 81, section 368(d), part of the use tax statute, is indicated by the language in italics as follows.

"Use" means the exercise by any person within this State of any right or power over tangible personal property purchased either within or without this State [by a purchaser from a vendor] and includes but is not limited to the receipt, storage, keeping or retention for [an] *any* length of time of any building materials by any contractor, builder, or property owner. *This term shall also include but not be limited to use of facilities, tools, tooling, machinery or equipment (including, but not limited to dies, molds and patterns) by a purchaser thereof even though he transfers title to another either before or after use by him and without regard to whether title is transferred to the other within or without this State.* This term shall not include the following:

(1) The sale of tangible personal property by any vendor in the regular course of business.

(2) The incorporation of tangible personal property as a material or part of other tangible personal property to be

produced for sale by manufacturing, assembling, processing or refining.

(Emphasis supplied). The legislature stated that the amendment was effective retroactive to July 1, 1947.

In *Martin Co.*, the Court of Appeals considered the 1957 amendment. *Martin Co.*, 216 Md. at 241, 140 A.2d 288. In that case, the taxpayer sued for refund of sales and use taxes imposed for the years 1951 to 1954, contending that it purchased the property with the intention of reselling, and thus, it was not subject to tax. *Id.* at 239, 140 A.2d 288. The Comptroller contended that the taxpayer's dominant purpose was to increase production facilities and not to resell the property. *Id.* at 239, 140 A.2d 288. The Court of Appeals first observed that sales and use taxes are complementary and that the use tax applies to transactions subject to a sales tax but on which no tax has been paid. *Id.* at 242, 140 A.2d 288. The Court, without deciding the issue, evaluated the question of whether the property was subject to tax by applying the same test for both the sales and use tax statutes, although the language in the two statutes was not identical. *Id.* at 242–43, 140 A.2d 288.[2] The Court observed that *Aerial Products* and *Baltimore Foundry* established that the taxpayer's purpose to resell, in *Martin Co.*, was sufficient because, under the applicable exclusion in the statutes, the taxpayer's purpose to resell the property did not have to be the sole purpose. *Id.* at 243, 140 A.2d 288.

After acknowledging that the purpose of the 1957 amendment was to change the result in *Aerial Products* and *Baltimore Foundry*, in the past and the future, the Court ad-

---

**2.** The Court in *Martin Co.* acknowledged that "Counsel for the appellant did point out in rebuttal argument that the Use Tax Act definition of 'use' in Sec. 368(d)(1) excludes sales by vendors 'in the regular course of business.' It does not employ the phrase found in Sec. 320(f) of the Sales Tax Act dealing with sales 'in which the purpose of the purchaser is to resell * * *.' Cf. *Comptroller v. Crofton Co.*[198 Md. 398, 84 A.2d 86 (1951)] *supra.* Sec. 370(c) of the Use Tax Act carries over exemptions under Sec. 322 of the Sales Tax Act." *Martin Co.*, 216 Md. at 243 n. 1, 140 A.2d 288.

dressed the amendment. *Id.* at 245, 140 A.2d 288. The recitals in S.B. 32 stated that it had always been the intent of the legislature that the definition of "sale" and "use" should exclude only tangible personal property or services held solely for resale. *Id.* The Court observed that the recitals were not part of the legislative enactment. Additionally, the amendment imposing a retroactive tax did not come within any exception that would permit its retroactivity. *Id.* at 245, 140 A.2d 288. Consequently, the Court held that retroactive application of the amendment was unconstitutional. *Id.* at 258, 140 A.2d 288.

In 1988, the legislature, as part of a recodification, combined the sales and use tax statutes into Tax–Gen section 11–101, *et. seq. See* S.B. 1, 1988 Md. Laws, ch. 2. The substance of former art. 81, section 320(f)(6) and former art. 81, section 368(d) appeared in Md.Code (1997 Repl.Vol.) Tax–Gen section 11–101, as part of the definition of "retail sale," in subsection (f)(2)and (3) and again, as part of the definition of "use." Md.Code (1997 Repl.Vol.) Tax–Gen section 11–101(*l* )(2)(ii) and (3)(i).

In the case before us, appellant relies on the language in Tax–Gen. (1997 Repl.Vol.) section 11–101(*l* )(3)(ii), the substance of which preceded the 1957 amendment. The Comptroller does not take issue with appellant's reliance on that section and specifically does not argue that this case is governed by the language in subsection (*l* )(2)(ii) and (3)(i), which exists by virtue of the 1957 amendment. If this case were governed by 11–101(*l* )(2)(ii) and (3)(i), it would be clear that "use" of the property in question could exist even though appellant intended to sell the property. It would still leave open the question of whether demonstration of the property, on the facts of this case, constitutes use.

Assuming that this case is governed by 11–101(*l* )(3)(ii), we do not accept appellant's argument that the case law and legislative history reviewed above compel a conclusion that the tax court committed an error of law. The Court of Appeals, in *Aerial Products* and *Baltimore Foundry,* treated the question

of whether the sales tax exclusion applied as a mixed question of law and fact and concluded that a collateral purpose of facilitating production of goods did not prevent the application of the exclusion when the taxpayer's purpose to resell was clear. *See Aerial Products,* 210 Md. at 627, 632, 124 A.2d 805. The Court did not purport to lay down a general rule of law but decided each case on the facts before it. *Id.*

Under the standard of review applicable today, we give appropriate deference to the tax court's decision, even as to mixed questions of law and fact, including in some instances the interpretation of statutes. *See Marzullo v. Kahl,* 366 Md. 158, 173, 783 A.2d 169 (2001)("Even though the decision of the Board of Appeals was based on the law, its expertise should be taken into consideration and its decision should be afforded appropriate deference."), and *Board of Physicians Quality Assurance v. Banks,* 354 Md. 59, 68–69, 729 A.2d 376(1999)("[A]n administrative agency's interpretation and application of the statute which the agency administers should ordinarily be given considerable weight by reviewing courts.").

In the case before us, the tax court concluded that the demonstration inventory was being used in a manner that did not bring it within the exclusion in question. The issue is whether that conclusion was supported by substantial evidence. We answer that question in the affirmative. There was evidence that over seventy-five per cent of the machines in Foss's inventory had been there for over a year. The evidence showed that much of that inventory equipment was used for training, displays, demonstrations at trade shows, and loaned to educational institutions. This was done in part to increase Foss's market share by promoting its products. There was also evidence that the equipment was used primarily to show it could be adapted to a particular customer's needs as opposed to effecting a sale of the item being demonstrated. Although some of the demonstration models were sold to customers, evidence was before the tax court that indicated those models were sold at a discount because of their prior use in demonstrations. Evidence showed that customer demon-

strations often occurred multiple times before the customer purchased a machine. The record indicates such demonstrations occurred about 150 times each year. In addition, the machines in question were used to train the new owners. These sessions occurred as frequently as three out of every four weeks each month.

The tax court's conclusion, a mixed question of law and fact, that the use was sufficient to make the exclusion inapplicable, is supported by the record. The question is not one of law, and applying our deferential standard of review, we accept the tax court's conclusion.

### Adjudication Versus Regulation

■ Appellant contends that application of the use tax provisions on these facts constitutes a change in policy that requires promulgation of a regulation, with the attendant notice, hearing, and publication. *See* Md.Code (1997 Repl. Vol.), Tax–Gen. § 2–103; *CBS Inc. v. Comptroller*, 319 Md. 687, 695, 575 A.2d 324 (1990) (rule-making required when agency determination is intended to be applied as a general standard, deals with broad policy issues, and effects a material change in existing law). Appellant argues that the determination that demonstrations constitute use "flies in the face" of *Aerial Products* and *Baltimore Foundry*. The Court, in those cases, treated the issue as a mixed question of fact and law, as do we in this case. As stated previously, the question is whether there is sufficient evidence to support the tax court's decision. We have addressed that issue above.

The tax court found that the imposition of tax in the case at bar was pursuant to a long standing policy of the Comptroller's office that property not purchased solely for resale was subject to tax, determined on a case by case basis. This conclusion was supported by the testimony of Richard Glacken, Chief Auditor in the Comptroller's office. Mr. Glacken testified that, at the time of trial, he had worked in the Comptroller's office, in one capacity or another, for 24 years.

Although appellant cites cases from other jurisdictions to persuade us that the Comptroller's actions were inconsistent with prevailing law, we decline to address those cases. Because of the differences in statutory language, the nature of the issue before us, and our standard of review, out-of-State decisions are of little value. The fact that each party in its brief distinguishes the cases cited by the other party demonstrates that none of them are controlling with respect to the core issue in this case, which is whether the tax court erred.

For the reasons stated above, we conclude that the tax court's decision is legally sustainable; thus we affirm the judgment of the circuit court.

**JUDGMENT AFFIRMED. COSTS TO BE PAID BY APPELLANT.**